WILLIAM F. CAHILL et al., Plaintiffs-Appellees, v. JOHN KEEFE, a/k/a John O'Keefe, et al., Defendants-Appellants.

(No. 59147;

First District (3rd Division)—March 6, 1975.

John W. Purney and Francis W. Gulbranson, both of Chicago, for appellants.

Arent J. Jacobson and John Gilligan, both of Chicago, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This is an action for damages resulting from an automobile collision. The plaintiffs sued John Mangum individually and d/b/a Cooling Tower Erectors, and John O'Keefe as an individual and as the agent of John Mangum and Cooling Tower Erectors. O'Keefe failed to appear, and the court directed a verdict against him. The jury returned a verdict for the four plaintiffs against the two defendants in the total amount of $50,000.

Mangum contends on appeal that the trial court should have directed a verdict in his favor. Because we agree with this contention, it is not necessary to consider the other issues raised by him.

About 12:30 P.M. on New Year's day, January 1, 1969, William Cahill was driving home with his wife Felicia, his son William Jr., and his daughter-in-law Betty, after going to church and having breakfast at a nearby restaurant. Cahill was driving east on Roosevelt Road, a six-lane highway. At the intersection of Roosevelt and Butterfield Road he stopped behind two cars in the inside lane preparatory to making a left turn.

The intersection is controlled by traffic lights which when green for eastbound traffic are red for traffic going in the other three directions. When the lights turned green for cars proceeding east, the westbound traffic in Roosevelt Road stopped, and the three cars waiting in the inside lane turned left in succession. While the Cahill car was turning, Betty Cahill saw a westbound car coming toward them from the outside lane of Roosevelt Road. The car was about 60 to 80 feet away and she estimated that its speed was 60 miles an hour. She yelled, "Dad, look out!" but the car came through the red light and crashed into the Cahill auto. All the Cahills were injured (three were knocked unconscious), and they did not see who was in the other car.

Deputy sheriffs arrived shortly after the accident. Deputy Robert Kirby talked to John O'Keefe who was sitting in the driver's seat of the other car, a Buick. O'Keefe told Kirby that John Mangum was driving the car when the collision occurred and that Mangum had gone to look for help. O'Keefe was taken to a hospital as were the four Cahills. Kirby remained at the scene for about an hour and a half and did not see Mangum during that time. He then went to the hospital and questioned O'Keefe again. O'Keefe repeated his story that Mangum had been driving the automobile and gave Kirby Mangum's address.

At the trial there was an objection to Kirby's testimony about his conversations with O'Keefe. The court ruled that the testimony could only be admitted against O'Keefe and not against John Mangum. Kirby testified that he checked with the Secretary of State of Illinois and found out that O'Keefe did not have a valid driver's license. He also said that he called John Mangum about January 5 or 6 and asked him whether he owned the Buick. Mangum replied that he had leased the auto for his business but did not know where it was. He asked why he was being questioned and was told that O'Keefe was involved in a collision while he was in the Buick and had informed the police that Mangum was the driver of the car. Mangum denied being in the car at the time of the accident. He said that he gave the car to O'Keefe, who "was" an employee, that he had not seen O'Keefe or the car since and on January 3

had reported it stolen. Kirby checked and verified the report of the stolen car. Kirby did not take notes of his conversation with Mangum, and his police report only included the information gleaned from the conversation that the Buick was leased to Mangum and had been reported stolen by him on January 3.

Mangum testified that he was the president and owner of Cooling Tower Erectors. It was stipulated that he and Cooling Tower Erectors would be considered one entity for the purpose of the verdict. He said that his company needed a car late in December 1968 because a pickup truck had broken down, so he leased an auto from Bauer Buick on December 27. He said O'Keefe was hired as a carpenter and had worked for his company between September 15 and December 6, 1968. Received in evidence were cancelled payroll checks paid to O'Keefe by Cooling Tower Erectors dated September 20 to December 6, 1968. Other exhibits received in evidence were a copy of O'Keefe's wage and tax statement for Federal income tax purposes and a copy of a corporate record kept on him. Mangum denied telling Officer Kirby that he gave the car to O'Keefe or that O'Keefe was a current employee of Cooling Tower Erectors. He testified that the last time he saw O'Keefe was shortly before Christmas 1968 and that the last time he saw the Buick was before New Year's Eve in the parking lot at his place of business. He discovered the car and the keys that he had placed in or on his desk were gone late in the afternoon on January 2. Mangum and his wife testified that they spent New Year's Day at home with their children and her parents and that he watched the football games on television. Mangum testified that no employees of Cooling Tower Erectors worked on New Year's Day.

John O'Keefe's niece testified that she saw him on New Year's Day when he attended a family reunion at her grandfather's house in Wheaton. Dinner was served at 1 P.M. Her uncle appeared to be sick when he arrived which was sometime before 3 o'clock.

Mangum moved for a directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence. The motions were denied as was his post-trial motion for judgment notwithstanding the verdict of the jury. He contends that denial of the motions was error because there was no proof that he drove the car, that he authorized O'Keefe to drive it or that O'Keefe was acting as his agent.

There was no evidence that Mangum drove the car himself. O'Keefe's statements to that effect made to Officer Kirby were only admitted against O'Keefe. The only evidence that Mangum authorized O'Keefe to drive the car was Kirby's testimony that Mangum told him he gave the car to O'Keefe. Mangum denied making that statement. Even if O'Keefe used the car with his permission, the plaintiffs would have to prove that

O'Keefe acted as his agent before Mangum could be held liable for O'Keefe's negligence. *Insurance Company of North America v. Hewitt-Robbins, Inc.* (1973), 13 Ill.App.3d 534, 301 N.E.2d 78; *Prewitt v. Hall* (1969), 113 Ill.App.2d 198, 252 N.E.2d 43.

■■ A presumption arises from the proof or admission of ownership of an automobile that it is controlled and driven by the agent of the owner. (*Brill v. Davajon* (1964), 51 Ill.App.2d 445, 201 N.E.2d 253.) The evidence that Mangum was the lessee of the Buick would raise the same presumption. The presumption creates a prima facie case and throws the burden of showing nonagency on the defendant. However, the presumption is overcome if the defendant produces evidence of nonagency, and if such evidence is strong and unquestionable and the plaintiff presents no contrary evidence, a verdict may be directed for the defendant. *Botich v. P. Lorillard Co.* (1970), 127 Ill.App.2d 232, 262 N.E.2d 38; *Brill v. Davajon.*

■■ The plaintiffs' proof of agency was limited to the fact that the car was leased to Mangum, and to Kirby's testimony that Mangum said O'Keefe "was" an employee. In the context in which it was used, the word "was" could have meant either at the present time or in the past. Mangum clarified Kirby's ambiguous "was" with exhibits showing that O'Keefe did not work for Cooling Tower Erectors beyond the first week of December and by his uncontradicted testimony that no employee of Cooling Tower Erectors worked on New Year's Day. Further, the proof of nonagency was enhanced by the place and time of the accident. The testimony by O'Keefe's niece that O'Keefe attended a family reunion on that New Year's Day in Wheaton provides an explanation for his trip and route. The route that he was taking was on the way to Wheaton and the accident occurred one-half hour before dinner was to be served. This evidence overcame the presumption of agency arising from O'Keefe's driving Mangum's auto, and since the plaintiffs presented no evidence to counter the strong and unquestioned proof of nonagency, they failed to sustain their burden of proof.

The evidence when viewed most favorably to the plaintiffs so overwhelmingly favored the defendant Mangum that no contrary verdict could stand. Therefore, either his motion for a directed verdict at the close of the evidence or his motion for a judgment *n.o.v.* should have been allowed.

The judgment against John Mangum is reversed. The judgment against John O'Keefe is, of course, undisturbed.

Reversed.

McNAMARA and MEJDA, JJ., concur.