252 N.J. Super. 467 (1991)
600 A.2d 143
SUSAN M. KAUFFMAN & MICHAEL KAUFFMAN, PLAINTIFFS-APPELLANTS,
v.
FRANCIS A. GULLACE, ZAYADIN BOYKO, JACK GULLACE, JOHN DOE 1-10 INDIVIDUALLY AND/OR XYZ CORP. 1-10 BODIES CORPORATE, DEFENDANTS/RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1991.
Decided December 2, 1991.
*469 Before Judges KING, DREIER and BROCHIN.
Vincent N. Falcetano, Jr. argued the cause for appellants (Drazin & Warshaw, attorneys; Vincent N. Falcetano, Jr., on the brief).
Philip G. Pagano argued the cause for respondent Francis A. Gullace (MaGee & Pagano, attorneys; Philip G. Pagano, on the brief).
*470 Stephen J. Spudic argued the cause for respondent Jack Gullace (Britt, Riehl & Spudic, attorneys; Stephen J. Spudic, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs appeal from a summary judgment granted in favor of defendants Francis A. (Frank) Gullace and Jack Gullace. Plaintiff, Susan Kauffman, was injured in a two-vehicle accident in Bricktown, New Jersey, allegedly caused by the other driver. This case requires us to examine the scope of the presumption that the driver of a vehicle is the agent of the owner. We here extend the presumption to most entruster-operator relationships.
At the time of the accident the driver of the van which struck the Kauffman vehicle apparently identified himself as Francis Gullace. Frank Gullace, however, clearly was in Jersey City at the time of the accident. He contended that his practice was to leave his license and registration in the glove compartment of the van which he had leased from Ford Motor Credit Corporation. On the day in question, as was his weekly custom, he left the van with his uncle, Jack Gullace, who had driven Frank to the railroad station so that Frank could go to Jersey City where he worked on weekends at a bar he owned.
The uncle owned the Laurelton Circle Motor Inn and a laundry business in the Ocean Beach area which Frank managed during the week. A former employee of the laundry and later a temporary employee of the motor inn was one Zayadin (Dinny) Boyko, a Yugoslavian who spoke little English. Although plaintiffs initially contended that there was believable evidence from which a jury could have found that Frank Gullace drove the van at the time of the accident, it is reasonably clear that the driver was Dinny Boyko. The police report and later hospital report show that the driver was Francis Gullace apparently because either his credentials were presented *471 to police and to the hospital, or because Boyko misrepresented himself. As we noted earlier, Frank's license and registration were kept in the van's glove compartment. Further, plaintiff conceded at oral argument before us that the evidence admits of only one conclusion: Boyko was the driver.[1]
This does not end the matter, however, since the depositions show that on occasion Boyko had driven Frank's car. Jack Gullace's deposition, read in its entirety by the trial judge, indicates that Boyko first worked for the laundry, from November through July, and then worked at the motel or even for Jack Gullace personally. Boyko's salary was not noted on the books of the motor inn from July until the accident, rather he was given cash for some jobs, and was permitted to stay overnight at the inn in a vacant room as compensation. Jack Gullace stated that he did not know if Frank let Boyko use the van. Further, he asserted that he did not remember whether he (Jack) let him use the van on occasion. When he was asked whether he permitted Boyko to use the vehicle when Frank left the van in Jack's care on a regular basis when Francis went to Jersey City, he stated: "I doubt that very much. I don't remember but I don't think so." Later when he was asked whether he could say that he absolutely did not permit Boyko to use the van, the answer was "I don't remember that, no.... I don't remember having given him permission to use Frank's van ... I don't remember." The answers certainly were less than a ringing denial.
We must view the facts on this summary judgment motion giving all reasonable inferences to plaintiffs. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). We can therefore posit that Boyko was Jack's employee, *472 and was known not to have a vehicle of his own. There was no notation on the police report or any indication that the vehicle had been hot-wired. Therefore, Boyko must have had a key.[2] Since Jack stated that he kept the only set of keys he possessed in his pocket, there is an implication that his "I don't remember" answers are either a true lack of recollection, or nothing more than a cover-up for his having permitted Boyko to use his nephew's van on the day in question. He did claim, however, that upon learning of the accident he checked and found that he still had the keys in his pocket. This claim would raise, but not determine a factual issue.
We do not know what Boyko was doing at the time of the accident. We do know, however, that Boyko had from time-to-time performed duties at Jack's laundry and later at his motel. According to Frank's deposition, he knew that Boyko did odd jobs for Jack, and also "sometimes he worked in the laundry," although he stated that at the time of the accident there were only two other employees of the laundry (and Dinny Boyko was not one of them).
There are two possible theories under which Jack or Frank Gullace could be held responsible for Boyko's negligence: vicarious responsibility and negligent entrustment. We note, however, that the complaint does not charge Frank Gullace with responsibility under either theory, but only as the driver. We must, therefore, examine these theories solely as they relate to Jack Gullace.
First, we have before us an unusual situation. The automobile was owned by Ford Motor Credit Corporation, and there is a presumption that the driver acted as the owner's agent. Townsend v. Great Adventure, 178 N.J. Super. 508, *473 521, 429 A.2d 601 (App.Div. 1981); Harvey v. Craw, 110 N.J. Super. 68, 73-74, 264 A.2d 448 (App.Div. 1970), certif. den., 56 N.J. 479, 267 A.2d 61 (1970). If the presumption ends with the relationship between the driver and the title owner of the vehicle, there is no doubt that the presumption has been rebutted. The owner leased the vehicle to Frank Gullace, who in turn lent the vehicle to Jack Gullace, who is alleged then to have permitted Boyko to drive the vehicle for some purpose beneficial to Jack Gullace. Even if we accept plaintiff's version of the chain of permission, the facts rebut any presumption that Boyko was operating the vehicle for the purposes of Ford Motor Credit Corporation.
We determine here, however, that the presumption of agency between the operator and owner extends beyond the relationship of title owner to operator. Here the vehicle had been leased by Frank Gullace who had the right not only to immediate possession of the vehicle, but also had the right to entrust it to others as he saw fit. We see no reason in law or in fact not to apply a presumption of agency between a lessee and operator. See Guerra v. Kings Plaza Leasing Corp., 172 A.D.2d 583, 584, 568 N.Y.S.2d 413, 414 (2d Dept. 1991) (presumption rebutted by facts in that case); Lynn v. Cepurneek, 352 Pa.Super. 379, 508 A.2d 308, 311 (1986) (reversing on the basis that the presumption was improperly charged after it was rebutted under Pennsylvania law); Carey v. Aaacon Transp., Inc., 61 A.D.2d 113, 401 N.Y.S.2d 1015, 1019 (3d Dept. 1978) (determined under New York statutory law, but prohibiting limitation of car delivery service's responsibility for its alleged independent contractor's operation of the vehicle); Cahill v. Keefe, 26 Ill. App.3d 929, 326 N.E.2d 105, 107 (App.Ct. 1975) (applying common law presumption to lessee-operator relationship). In Cahill the court stated:
A presumption arises from the proof or admission of ownership of an automobile that it is controlled and driven by the agent of the owner. The evidence that [the entruster] was the lessee of the Buick would raise the same presumption. *474 The presumption creates a prima facie case and throws the burden of showing non-agency on the defendant.
Ibid. (citations omitted).
There also appears to be no reason why, once the vehicle was delivered from Frank Gullace to Jack Gullace, again with the apparent authority to entrust another with the use of the car, that this same presumption should not apply to hold Jack Gullace responsible for Boyko's actions, unless the presumption is rebutted. As stated in Harvey v. Craw, supra,
To prevent the issue of agency from reaching the jury, the owner must show by uncontradicted testimony that no employer-employee or principal-agent relationship existed, or, if one did exist, that the employee or agent had transgressed the bounds of his authority.
This presumption, aside from placing upon the owner of a vehicle the burden of producing evidence as to the nature of the relationship existing between himself and the driver (a burden which `presumably' he is in a better position to carry), also serves the added benefit of bestowing upon plaintiffs a means of avoiding a directed verdict  i.e., it is a means of getting to the jury.
The cases in this State  as indeed in most of the others  involve primarily two fact situations. Either the vehicle is owned by a parent and is being operated by a member of his family, or the driver is actually employed by defendant owner and the question involves deviation from the scope of that employment.
110 N.J. Super. at 73-74, 264 A.2d 448 (citations omitted). These principles apply equally well to anyone in possession of a vehicle who entrusts it to another. Given the equivocal denial of agency by Jack Gullace at his deposition, summary judgment was mistakenly granted.
Plaintiff also asserts the theory of negligent entrustment. From the facts as they developed during the depositions, a jury could infer that Boyko had been entrusted with the car, even if at the time of the accident he was not on the business of Jack Gullace. Jack contended that the keys to the van remained on his key ring in his pocket. Yet, the service station owner recalled that the keys were in the Gullace van when it was moved following the accident. While there may have been a duplicate set of keys, a summary judgment motion is not the place to resolve disputed facts. As noted earlier, Jack Gullace's *475 deposition was equivocal concerning whether there was a practice of entrusting the vehicle to Boyko.
The facts raise the issue of whether Boyko was a licensed driver. Entrustment of a vehicle to an unlicensed driver, except as permitted by the motor vehicle laws for the purpose of driver education, might be considered negligence. Cf. Townsend v. Great Adventure, supra, 178 N.J. Super. at 521, 429 A.2d 601. Jack Gullace remembered that Boyko was permitted to drive Frank Gullace's vehicle "[w]hen he showed us a license and stuff, when we first hired him. I remember that he showed some kind of identification that he could drive and stuff. From what I remember. I don't really remember, it's going back quite a ways." At that time Frank Gullace, who managed the laundry business, apparently permitted Boyko to drive the van, and Jack stated that he did not know whether it was for business or personal use. Jack continued, stating that his records "indicate that I hired him with a Social Security number. He had to give to me  if he was driving he had to show something to drive." Earlier, however, Jack had stated that Boyko had been terminated at the laundry because of a "missing Social Security number." After that, apparently, Boyko started working at Jack Gullace's motor inn and doing odd jobs for him at his home for which he was paid in cash.
From this testimony there might arise some question regarding the accuracy of Jack Gullace's recollection of whether Boyko was a licensed driver. Boyko's actions after the accident in presenting Frank Gullace's driver's license to the police is at least some indication that Boyko himself was not a licensed driver. A jury could find that Jack gave conflicting testimony concerning Boyko's documentation.
As noted in Harvey v. Craw and the several cases cited therein, the evidence to overcome the presumption of agency before trial must be "uncontradicted testimony." 110 N.J. Super. at 73, 264 A.2d 448; see also Tischler v. Steinholtz, 99 N.J.L. 149, 152, 122 A. 880 (E. & A. 1923). In Tischler the court *476 further noted that unless there is such "uncontradicted proof to the contrary," a directed verdict (and certainly a summary judgment) cannot be granted. The court stated: "If, however, the evidence is contradictory, or reasonably subject to contradictory interpretations, the question of liability is for the jury." 99 N.J.L. at 152, 122 A. 880. Had plaintiffs' discovery not been curtailed by summary judgment, Boyko's license status at the time could have been secured from motor vehicle records in this State and in other states in which Boyko may have resided during any applicable period of licensing.
Although plaintiffs have also argued that Jack Gullace might be liable for negligence in the care of the keys to the van, we do not see any factual predicate here that could give rise to such liability. Cf. Hill v. Yaskin, 75 N.J. 139, 147-148, 380 A.2d 1107 (1977).
At this juncture, there are several issues which might be more completely developed, and we cannot disregard plaintiffs' claim that discovery has not been completed. Given plaintiffs' understandably belated acceptance of the theory that Boyko and not Frank drove the vehicle, the discovery period should have been extended. The summary judgment motion and order were premature concerning the issues of agency and negligent entrustment.[3] We concur with the judge's dismissal of the single claim alleged against Frank Gullace, based upon his status as the operator of the van. As discovery progresses, if *477 any agency or entrustment claim can be established against him, plaintiffs may apply for reinstatement of the complaint as to Frank. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 264-265, 531 A.2d 1078 (App.Div. 1987), certif. den., 110 N.J. 196, 540 A.2d 189 (1988). As of this juncture, however, the summary judgment granted in his favor is affirmed. The summary judgment entered in favor of Jack Gullace is reversed and the matter is remanded to the Law Division for the completion of discovery and such further proceedings as may be appropriate.
Affirmed in part; reversed and remanded in part.
NOTES
[1] The hospital records clearly show that the person admitted spoke only Yugoslavian, although he understood some English. Frank Gullace is of Italian origin and speaks accentless English. Those at the scene of the accident also noted that the driver had such a heavy foreign accent that it was difficult to understand him.
[2] The owner of a gas station adjacent to the crash site who towed the Gullace van gave his deposition. He stated that he believed that there was a key in the ignition because he put the van into neutral to tow it and in order to move the shift lever into "park" and out, a key must have been in the ignition.
[3] While plaintiffs claim that the earlier denial of summary judgment motions by a different judge precluded the trial judge here from granting summary judgment, we note that there is no impediment to multiple motions for summary judgment, if the facts developed at some later point in the discovery process change sufficiently to warrant a new application. Unfortunately, we were not supplied with the facts available to the judges who decided the earlier motions so that we could determine whether the motion should even have been entertained. We can only assume that there were sufficient new facts for the trial judge to conclude that a new review was appropriate. While we disagree with the trial judge's conclusion, we do not fault the judge for considering the merits of defendants' application.