Betty Sue Day was injured when an automobile she was driving collided with an automobile driven by Vernon Williams. Day sued Thelton Williams, Vernon's employer, alleging that Thelton had negligently entrusted the automobile into Vernon's possession. State Farm Mutual Automobile Insurance Company, which insured Day's automobile, settled with Day under her policy and then sued Thelton, stating subrogation and negligent entrustment claims. The trial court entered a summary judgment for Thelton on all claims. Day and State Farm appeal.
On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.;McClendon v. Mountain Top Indoor Flea Market, Inc.,601 So.2d 957 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact." McClendon, at 958.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). On review of a summary judgment, this Court reviews the record in a light most favorable to the nonmovant. Wilma Corp. v.Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993).
Vernon was employed by Thelton as a repairman and builder at Thelton's pallet business. During December 1992, Vernon decided to purchase a used automobile from Thelton as a Christmas present for his wife. A few days before the accident, Vernon and Thelton went to a local bank to arrange a loan for the purchase of the automobile. Thelton cosigned Vernon's note to the bank. Vernon received his loan and paid Thelton, and Thelton signed a bill of sale while at the bank.
On December 23, 1992, Vernon received the keys to the automobile from Thelton while at work, at approximately 11:30 a.m. Vernon finished work on his pallets at 3:30 p.m. At approximately 5:00 p.m., Vernon's foreman, Murray Henley, saw Vernon drinking a beer with a coworker on the business premises while making a minor repair on the automobile. Henley spoke with Vernon and the other worker for approximately 45 minutes; during that time he saw Vernon drink one beer. At approximately 7:00 p.m., Vernon was involved in the accident with Day. He was charged with driving under the influence and driving without a driver's license.
Thelton testified that he was unaware that Vernon had been drinking on the business premises and had assumed that Vernon possessed a driver's license when he sold him the car. Thelton stated that he had known *Page 916 
that Vernon had previously been stopped several times by police for driving without a license. Vernon had not been allowed to drive company vehicles away from the business because of his lack of a driver's license. Before the accident, Thelton had directed his secretary, Sally Parker, to help Vernon obtain a driver's license. Parker had assisted Vernon in his attempts to procure a birth certificate, which he needed to obtain the license. Parker stated that in late 1992 Vernon had gone to take a driver's test and had returned smiling and holding a small card, which she said she assumed was a temporary driver's license. Thelton stated that after Vernon had returned from the driver's test Parker told him that Vernon had received his driver's license.
Day and State Farm argue that Thelton negligently entrusted the automobile to Vernon, because, they argue, Thelton knew or should have known, when he delivered possession of the automobile, that Vernon had no driver's license.
One who negligently entrusts a motor vehicle to an incompetent driver who is likely to cause injury to others because of the driver's incompetence may be liable for damages that proximately result from that entrustment. Keller v.Kiedinger, 389 So.2d 129 (Ala. 1980). Stated another way,
 "if an owner of a motor vehicle entrusts its operation to one known to him to be an incompetent, reckless, or careless driver, the owner will be liable to one injured by the combined negligence of the owner and the operator."
Dean v. Johnston, 281 Ala. 602, 605, 206 So.2d 610 (1968) (emphasis in original). As the Court noted in Dean, knowledge by the entrustor of the driver's incompetence is fundamental to the negligent entrustment claim; without proof of such knowledge, the negligent entrustment claim must fail. See alsoChiniche v. Smith, 374 So.2d 872 (Ala. 1979); Mason v. New,475 So.2d 854 (Ala. 1985) (also holding that the lack of a driver's license, when combined with other evidence of a driver's lack of skill, is probative evidence of incompetence in a negligent entrustment claim.)
The record here indicates that Thelton sold the automobile to Vernon. In Oates v. Chris Meyers Pontiac-GMC, Inc.,583 So.2d 1335 (Ala. 1991), this Court quotedShipp v. Davis, 25 Ala. App. 104,106, 141 So. 366, 367 (1932):
 " 'Whether by a gift or a sale when an automobile is placed in the possession and control of a person, sui juris, such transfer passes the title to the buyer or donee, and thereafter responsibility for its operation rests with such buyer or donee. If, however, at the time of delivery of possession and control, the receiving party was by reason of intoxication or other cause incapacitated from driving the machine with reasonable safety to the public, a different rule would apply.' "
583 So.2d at 1336.
The trial court properly entered the summary judgment for Thelton. We note that Thelton's testimony demonstrates that he was unaware that Vernon did not possess a driver's license. However, even if Thelton had been aware of that fact, that alone would not support a finding of negligent entrustment, under the circumstances of this case. The record indicates that Vernon was an experienced adult driver and had exhibited no indication that he was an incompetent driver. Although he had previously received several tickets for driving without a license, Vernon had previously received only one other traffic citation; that was for speeding, and he had received that ticket approximately two years before the accident. The plaintiffs presented no evidence indicating that Thelton had reason to believe Vernon was an incompetent driver. Vernon's competence as a driver does not hinge upon the existence or nonexistence of a driver's license in his name. See Giles v.Gardner, 287 Ala. 166, 249 So.2d 824 (1971).
Thelton had sold the automobile to Vernon, and he delivered possession of the vehicle to him at approximately 11:30 on the morning before the accident. Thelton had no control or dominion over the automobile after that time. Vernon was not drinking alcohol when Thelton delivered the automobile to him, and the record indicates that Thelton did not know or have reason to know that Vernon *Page 917 
would drink shortly thereafter. The responsibility for the automobile's operation rested with Vernon after Thelton delivered it to him, and the record does not indicate that Vernon was incompetent at the time of delivery. Thelton Williams supported his summary judgment motion with a prima facie showing that he had not negligently entrusted the automobile to Vernon Williams. The plaintiffs presented no substantial evidence to rebut that showing.
The judgment of the trial court is affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, and BUTTS, JJ., concur.