933 P.2d 1233

**Jose and Rosario TELLEZ, the Natural Parents and Survivors of Gloria M. Tellez, a single woman, Plaintiffs–Appellants,**

v.

**Dennis SABAN and Tracey Saban, husband and wife; A–AAAble Ltd., dba Saban's Rent–A–Car, an Arizona corporation, Defendants–Appellees.**

No. 1 CA–CV 94–0430.

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 24, 1996.

Reconsideration Denied Oct. 17, 1996.

Review Denied March 25, 1997.

Meyer, Hendricks, Victor, Osborn & Maledon by Mark D. Samson, Mark A. Fuller, Phoenix, for Plaintiffs–Appellants.

Cohen & Cotton, P.C. by John H. Cotton, Daniel G. Dowd, John M. O'Neal, Phoenix, for Defendants–Appellees.

## OPINION

TOCI, Judge.

Arizona prohibits a rental car company from knowingly renting a car to an unlicensed driver. Ariz.Rev.Stat.Ann. ("A.R.S.") § 28–477(B) (1989).[1] Dennis Saban and Saban's Rent–A–Car ("Sabans") violated the statute by renting a car to John Pitts, knowing that he was going to entrust the car to Karla Fernandez, an unlicensed driver. While driving the rental car, Fernandez ran a red light and collided with a van driven by Gloria M. Tellez, who died in the accident.

Jose and Rosario Tellez ("Tellez"), Gloria's parents, sued Sabans for her wrongful death. The trial court entered summary judgment for Sabans, ruling as a matter of law that Sabans' violation of a statute was not the proximate cause of the fatal accident. On appeal, we hold that the trial court erred in determining as a matter of law that Sabans' conduct was not the proximate cause of the accident. We reject the rationale of *Christy v. Baker*, 7 Ariz.App. 354, 439 P.2d 517 (1968), and reverse the judgment for defendants.

## I. FACTUAL AND PROCEDURAL HISTORY

We view the facts in the light most favorable to Tellez, the party against whom the court entered summary judgment. *Ontiveros v. Borak*, 136 Ariz. 500, 503, 667 P.2d 200, 203 (1983). In August 1991, Fernandez was twenty-four years old and had neither a car, credit card, nor valid driver's license. Because she wanted to drive to Tucson, she asked John Pitts to use his credit card to help her rent a car.

---

1. A.R.S. § 28–477(B) states:
   No person shall rent or lease a motor vehicle to another until he has inspected the driver's license of the person to whom the vehicle is to be rented or leased and compared and verified the signature thereon with the signature of the person written in his presence.

On August 30, Pitts and Fernandez drove Pitts' truck to Saban's Rent–A–Car and parked in view of Michael Loan and Dennis Saban, the employees on duty. Fernandez selected a car, and Loan consulted her through Pitts concerning the rental terms. Pitts rented the car but informed Loan that Fernandez was going to drive it.

Loan asked whether Fernandez had a driver's license. When Fernandez said that she did not, Loan told her that she could not drive the car off the lot. In Loan's presence, Pitts told Fernandez to drive his truck off the lot. Fernandez responded, "Okay, we'll go around the corner and we'll switch cars." Neither Saban nor Loan did anything to prevent the exchange of vehicles.

Although Pitts and Saban had understood that the rental was for a single day, Fernandez did not return the car after driving to and from Tucson. On September 7, 1991, seven days after taking possession of the car, Fernandez gave a party at which she drank heavily. During the evening, she left the party and drove the car to a bar where she consumed alcoholic beverages over a three-hour period. Upon leaving the bar, she stopped to purchase beer. In driving away from the store, she ran a red light and collided with Gloria Tellez's vehicle.

Tellez brought this action on September 8, 1992, and alleged, among other matters, that Sabans had negligently rented the vehicle and that as a result of Sabans' violation of the statute requiring inspection of Fernandez's driver's license, Fernandez caused the accident that killed Gloria Tellez. The trial court granted summary judgment for defendant Dennis Saban on the claim for negligent

entrustment. The court found "[n]o evidence exists that Karla Fernandez's lack of a driver's license played any part in causing the accident." Therefore, as a matter of law, the court concluded that the evidence "failed to show that the Defendants' negligent entrustment of this vehicle to an unlicensed driver was a proximate cause of or contributed to Karla Fernandez negligently running the red light, hitting and killing" Gloria Tellez, citing *Christy v. Baker,* 7 Ariz.App. at 355–58, 439 P.2d at 518–20. The trial court also granted summary judgment to Saban Rent–A–Car on the same basis and denied Tellez's motion for reconsideration.

## II. DISCUSSION

Defendants concede that they violated A.R.S. section 28–477(B) by entrusting Fernandez with a rental car knowing that she was an unlicensed driver. They contend, however, that the trial court correctly found no proximate cause linking either their conduct or Fernandez's lack of a license with the fatal accident. They argue that under *Christy* and *Quintero v. Continental Rent–A–Car System, Inc.,* 105 Ariz. 135, 460 P.2d 189 (1969), they are not liable to Tellez.[2] Tellez, on the other hand, asserts that the court erred in deciding the question of proximate cause as a matter of law and that *Christy* does not control this case.

■ One who violates A.R.S. section 28–477(B) is subject to a fine. A.R.S. § 28–491 (1989). The court in *Christy,* however, assumed without discussion that a violation of this statute by the renter of an automobile constituted negligence *per se.* 7 Ariz.App. at 355, 439 P.2d at 518. The court's decision on

---

2. Sabans' reliance on *Quintero* is misplaced. *Quintero* predates our comparative negligence statute, A.R.S. section 12–2505 (Supp.1995). That case arose when Walter Walk's surviving widow and children sued the automobile rental agency for negligently entrusting him with the vehicle in which he was killed and the plaintiff in *Christy* was injured. The complaint alleged that Walk's reckless and negligent driving caused the collision. 105 Ariz. at 136, 460 P.2d at 190. Our supreme court affirmed summary judgment for the defendant because under those facts,

Walk's negligence was the proximate cause of his own death, and therefore, he could not have sued Continental for his injuries. Furthermore, his survivors could sue Continental for Walk's death only if, had he survived, he could have maintained an action on his own behalf. Because he could not, they could not, and the trial court properly dismissed the action. *Id.* The case, however, does not say that no proximate cause existed between Continental's negligence and Walk's death.

this point implies that the statute establishes a standard of care for the renting of vehicles. This mandated standard of care necessarily preempts the inquiry in a common law negligence case of whether the risk of harm in renting a vehicle to an unlicensed driver is an unreasonable one. Restatement (Second) of Torts ("Restatement") § 286 cmt. d (1965).

We note at the outset, however, that had the legislature intended to establish A.R.S. section 28–477(B) as a standard of conduct in a negligence action, it could have easily done so. Since the legislature did not so provide, the question is whether this court in *Christy* properly adopted the statute as the standard of conduct for a reasonable person. Restatement § 286 cmt. d. Therefore, we begin with some observations about the relationship between common law negligence and negligence arising from the violation of a statute.

■ "[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." *Id.* § 282, at 9. The standard of conduct required of a reasonable person "may be (a) established by a legislative enactment ... which so provides, or (b) adopted by the court from a legislative enactment ... which does not so provide...." *Id.* § 285, at 20. A court may adopt a statute as the relevant standard of care if it first determines that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm. *Id.* § 286, at 25. Violation of the statute thus stamps the defendant's conduct as negligence *per se, id.,* but will not render the defendant liable to the plaintiff unless the violation is the legal cause of the plaintiff's injury and no other defenses negate liability. *Id.* § 288B cmt. b, at 38.

■ Not all statutes establish a standard of conduct applicable in a negligence action. We cannot say that A.R.S. section 28–477 was intended to protect any particular individual or class of persons from harm. Rather, it was intended to further the state's interest in requiring that all persons who operate motor vehicles on public highways are licensed. *See* Restatement § 288 cmt. b (statutes intended for the protection of public at large rather than an individual or class of persons do not create the standard of conduct required of a reasonable. person). Therefore, we find no reason to allow the breach of this statute, which the legislature punishes with a fine, to create a cause of action in tort for Tellez. Sabans' violation of section 28–477(B) is not negligence *per se,* and their conduct must be measured by the common law standard of conduct of a reasonable and prudent owner of rental vehicles. This conclusion, however, does not dispose of Sabans' potential liability. We will return to that question after a brief summary of *Christy v. Baker.*

Defendants cite *Christy v. Baker* as dispositive of their liability to Tellez. In that case, Baker, a passenger in a rented car driven by Walter Walk, was injured in a one-car accident. 7 Ariz.App. at 354, 439 P.2d at 517. She sued Marshall Christy, the owner of a rental car company from whom Walk had rented cars on three prior occasions. On the fourth occasion, when Christy's employee asked to see Walk's driver's license, Walk said that he had one but did not produce it. The employee gave Walk the keys and completed the rental application from company records. *Id.* at 355, 439 P.2d at 518.

The evidence established that Walk was a competent driver, that his driver's license had been seized because he had inadvertently failed to appear at a hearing on a prior conviction for driving while intoxicated, and that had he appeared, he would have kept his license. *Id.* at 355, 357, 439 P.2d at 518, 520. This court relied on *Lutfy v. Lockhart,* 37 Ariz. 488, 295 P. 975 (1931), to conclude that lack of a driver's license was not contrary evidence of Walk's incompetence. 7 Ariz. App. at 357, 439 P.2d at 520.

Christy's liability thus hinged solely on a violation of A.R.S. section 28–477(B). Al-

though the jury returned a verdict for the plaintiff, this court reversed. The court assumed that the statute was intended to protect the public safety, and because Christy admitted its violation, that Christy was guilty of negligence *per se. Id.* at 355, 439 P.2d at 518. Had Christy rented Walk the car *knowing that he was incompetent,* the court conceded that proximate cause might exist between the statutory violation and the accident. *See id.* at 357, 439 P.2d at 520. But because the court found that Walk's negligent driving alone caused the accident, it held as a matter of law that Christy's statutory breach was not the proximate cause of Baker's injuries. *Id.* at 357–58, 439 P.2d at 520–21.

For reasons stated above, the court erred in finding A.R.S. section 28–477(B) to be a "safety" statute that created a standard of care the violation of which labelled Christy's conduct negligent. Further, although the court disposed of the case by finding no proximate cause, more accurately, Christy was simply not negligent: Christy knew that Walk was a competent driver and had produced a license on prior occasions. On the day of the accident, Walk stated that he had a license, and it was merely fortuitous that he did not. Walk's license had been revoked for failure to appear at a scheduled hearing, but had he actually received the notice and attended the hearing, he would have retained his license and thus had it in his possession on the occasion of the fourth rental. Christy's duty as a renter of vehicles was "to act reasonably in the light of foreseeable and unreasonable risks." *Rogers ex rel. Standley v. Retrum,* 170 Ariz. 399, 400, 825 P.2d 20, 21 (App.1991).

From Christy's perspective, he had no reason to foresee an *unreasonable* risk of harm when he rented to Walk, a driver he knew from prior experience to be competent. *See id.* at 402–03, 825 P.2d at 23–24; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 42 at 275 ("In [some] cases the standard of reasonable conduct does not require the defendant to recognize the risk, or to take precautions against it. . . . When courts say that his conduct is not the 'proximate cause' of the harm, they not only obscure the real issue, but suggest artificial distinctions of causation which have no sound basis. . . .").

Here, by contrast, Sabans did not know that Fernandez was a competent driver. Sabans contend, however, that their knowledge that she did not have a license nevertheless gave them no reason to believe that she was an incompetent driver or to foresee that she might drive negligently. We disagree. Although Sabans' statutory breach does not render their conduct negligence *per se,* we conclude that the owner of a rental car agency owes a common law duty to other motorists to guard against unreasonable risks of harm created by persons to whom it rents vehicles. *Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 31, 893 P.2d 26, 31 (App.1994) (duty obliges one to act reasonably in the light of foreseeable and unreasonable risks); *see also Petolicchio v. Santa Cruz County Fair & Rodeo Assoc., Inc.,* 177 Ariz. 256, 261, 866 P.2d 1342, 1347 (1994) (whether duty exists is decided by the court).

Having concluded that Sabans had a duty to protect the public from the unreasonable risk of harm of entrusting incompetent drivers with motor vehicles, we must determine whether a reasonable jury could conclude that Sabans' actions breached this duty.[3] The dissent contends that Sabans' knowledge that Fernandez was unlicensed

---

**3.** The dissent notes that we have reached issues not raised below or in the appellate briefs. The practice of not addressing issues for the first time on appeal "is merely a rule of procedure, and not a matter of jurisdiction." *Town of So. Tucson v. Board of Supervisors of Pima County,* 52 Ariz. 575, 582, 84 P.2d 581, 584 (1938). A legal principle, although not proposed by either party, should be adopted if it will expedite enforcement of a right or redress an injustice. *Rubens v. Costello,* 75 Ariz. 5, 9, 251 P.2d 306, 308 (1952) (quoting 4 C.J.S. *Appeal and Error* § 242). Furthermore, the parties' statement of the issues does not preclude us from raising an error or addressing an issue not contemplated by the parties. *Word v. Motorola, Inc.,* 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983).

cannot support an action for negligent entrustment. We respectfully disagree.

Unlike *Christy,* where the rental car owner knew that the driver had exhibited his license and successfully rented and returned cars on other occasions, Sabans did not know if Fernandez possessed even minimal driving skills. We acknowledge that the mere absence of a valid driver's license is not necessarily indicative of a person's driving skills. For example, one who has met the minimum licensing standards and has been licensed may have let his license expire. Thus, the possibility exists that an unlicensed driver is fully competent to operate a motor vehicle.

Nevertheless, a reasonable person in Sabans' position should have known that it was equally possible that Fernandez was unlicensed because she lacked the minimum qualifications to obtain a license. For example, she might be unlicensed because she failed to demonstrate understanding of the driving laws and of safe driving practices or because her license had been revoked as a result of the addictions, failures, or other disabilities listed in A.R.S. section 28–413. Indeed, had Sabans inquired, Fernandez might have revealed that her license had been revoked for DUI violations. We conclude that reasonable minds could differ on whether Sabans' act of renting to an unlicensed driver without investigating the reason for the absence of a license created an unreasonable risk of harm to the public.

We are not persuaded by the dissent's assertion that we have done violence to the law of negligent entrustment.[4] If Sabans rented to Fernandez after learning that her license had been revoked for DUI violations,

Sabans could be found negligent. *See* Restatement § 308 cmt. b. illus. 4. (If A lends his automobile to B, whose license has to A's knowledge been revoked for reckless driving, and B negligently runs down C with A's vehicle, A is negligent toward C.). To allow Sabans to avoid all liability as a matter of law simply by turning a deaf ear to the reasons for Fernandez's lack of a license would violate the legislative policy articulated in A.R.S. section 28–477. *Id.* § 308 cmt. b.

Nor are we persuaded by the dissent's citation of *Anderson Aviation Sales Co. v. Perez,* 19 Ariz.App. 422, 426, 508 P.2d 87, 91 (1973), and *Powell v. Langford,* 58 Ariz. 281, 285, 119 P.2d 230, 232 (1941). Although those cases state the general rule, they do not restrict the tort of negligent entrustment to cases in which the owner entrusts a vehicle to one known to be incompetent or inexperienced. *See* Restatement § 308. The latter section applies where the "third person's known character or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse [the instrumentality]." *Id.* cmt. b.

Nevertheless, even assuming that a jury were to find Sabans negligent, before Tellez may recover, the jury must also find that Sabans' conduct was the legal and proximate cause of Gloria Tellez's death. Proximate cause is "that which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Brand v. J.H. ·Rose Trucking Co.,* 102 Ariz. 201, 205, 427 P.2d 519, 523 (1967). To be *a* proximate cause, Sabans'

4. We note in passing that other courts have found entrustment of a vehicle to an unlicensed driver is some evidence of negligence. *See Kauffman v. Gullace,* 252 N.J.Super. 467, 600 A.2d 143, 147 (App.Div.1991) (entrusting a vehicle to an unlicensed person "might be considered negligence"); *Williams v. Bolding,* 6 Ohio App.3d 48, 452 N.E.2d 1346, 1348 (1982) (lack of a license is relevant evidence in negligent entrustment); *see also Mason v. New,* 475 So.2d 854, 856 (Ala.1985) (lack of a license is probative of driver's incompetence in negligent entrustment action); *Johnson v. Owens,* 639 N.E.2d 1016, 1022 (Ind.App.1994) (negligent entrust-

ment could be premised on entrusting car to unlicensed driver, but no evidence entrustor knew driver was unlicensed); *Tri–State Truck & Equip. Co. v. Stauffer,* 24 Md.App. 221, 330 A.2d 680, 685 (1975) (when a statute requires licenses and forbids owners from allowing unlicensed persons to drive, statutory violation is evidence of negligence or is negligence *per se* ); *LaRoque v. Sanchez,* 641 S.W.2d 298, 301 (Tex.App.1982) (driver's lack of license is an element of negligent entrustment).

conduct need have contributed only slightly to the injury. *Ontiveros,* 136 Ariz. at 505, 667 P.2d at 205. Ordinarily, proximate cause is a jury question. *Smith v. Johnson,* 183 Ariz. 38, 41, 899 P.2d 199, 202 (App.1995).

Here, Sabans' negligence will remain a proximate cause of the injury despite Fernandez's intervening negligence if (1) Sabans' conduct was a cause-in-fact and (2) the intervening acts were foreseeable by a reasonable person in Sabans' position and do not appear abnormal or extraordinary in hindsight after the event. *Robertson v. Sixpence Inns of Am., Inc.,* 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990); *Ontiveros,* 136 Ariz. at 505–06, 667 P.2d at 205–06.[5]

Cause-in-fact turns on whether Sabans helped to cause the accident that resulted in Gloria Tellez's death and whether that accident would not have occurred but for Sabans' conduct. We cannot answer these questions as a matter of law in the negative. If Sabans had not rented to Fernandez without first investigating the reason for her lack of a license, Fernandez would presumably not have been driving the car and could not have collided with Gloria Tellez seven days later. A reasonable jury could conclude that Sabans' conduct "helped cause" the accident and that the accident would not have occurred without that conduct.

Fernandez's own behavior was, of course, an intervening act and a cause-in-fact of the accident. An intervening act relieves the original actor of liability for his negligence if it "steps between the original wrongful act or omission of the defendant and the injury to the plaintiff ... and produces a result which would have not otherwise occurred." *City of Phoenix v. Schroeder,* 1 Ariz.App. 510, 516, 405 P.2d 301, 307 (1965). The intervening act, however, must be both unforeseeable and, with the benefit of hind-

sight, abnormal or extraordinary. *Robertson,* 163 Ariz. at 546, 789 P.2d at 1047.

The definition of a reasonably foreseeable event is an event that might "reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind." Keeton, et al., *supra,* § 44, at 307. As we stated in *Rogers,* in determining the legal cause of an injury, we " 'take a broad view of the class of risks and victims that are foreseeable, and the particular manner in which the injury is brought about need not be foreseeable.' " 170 Ariz. at 401, 825 P.2d at 22 (citation omitted). Further, the "reckless or criminal nature of an intervenor's conduct does not place it beyond the scope of a duty of reasonable care *if that duty entails foresight and prevention of precisely such a risk." Id.* at 401–02, 825 P.2d at 22–23 (emphasis added).

The dissent argues that Fernandez's negligence was an intervening superseding cause. The dissent claims that no reasonable person in Sabans' position could foresee that "renting a car to Fernandez, through Pitts, for one day, would result in Fernandez absconding with the car, getting heavily intoxicated, running a red light, and colliding with another vehicle eight days later."[6] We think the issue is not whether Sabans should have foreseen that Fernandez would "abscond" with the vehicle and become intoxicated. Rather, the issue is whether a reasonable person in Sabans' position would have foreseen that Fernandez might operate the vehicle negligently and whether, with the benefit of hindsight, her negligence is abnormal or extraordinary.

As we discussed above, a reasonable person in Sabans' situation should have known that Fernandez's absence of a license might be related to her competency as a driver. Consequently, Sabans should have made fur-

---

5. Foreseeability of risk plays a dual role in negligence: it not only defines the standard of care but also determines whether an actor's conduct was the proximate cause of the injury. Jefferson L. Lankford & Douglas A. Blaze, *The Law of Negligence in Arizona* § 2.5, at 13 (1992).

6. The record is clear that the car was rented by Pitts because Fernandez did not have a driver's license. Sabans knew that the car was rented for Fernandez's use.

ther inquiry to determine why Fernandez did not have a driver's license. Had Sabans inquired, they presumably would have learned that Fernandez's license had been revoked for DUI convictions, and as a result of that information, would not have rented the vehicle.

Similarly, a reasonable jury could find ·that, under these circumstances, an unlicensed driver's negligent driving eight days after the car was entrusted to her was neither abnormal nor extraordinary in hindsight. Where cause-in-fact exists, remoteness in time and space do not defeat proximate cause. Keeton et al., *supra,* § 36, at 282–83. The legislature declared by the enactment of A.R.S. section 28–477(B) that renting automobiles to unlicensed drivers increases the risk of harm to the public. We cannot say as a matter of law that Fernandez's negligence a week later was outside the scope of the risk created by Sabans' conduct in failing to investigate the reason for Fernandez's lack of a license. *See Rossell v. Volkswagen of Am.,* 147 Ariz. 160, 169, 709 P.2d 517, 526 (1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986) (scope of risk due to original actor's negligence may include foreseeable negligent or criminal acts of others); *Central Alarm of Tucson v. Ganem,* 116 Ariz. 74, 77, 567 P.2d 1203, 1206 (App.1977) (intervening burglary "within the ambit of risk" created by original actor's negligence).

### III. CONCLUSION

We disagree with the trial court's reliance on *Christy v. Baker* and its ruling that, as a matter of law, Gloria Tellez's death was not a proximate result of Sabans' breach of A.R.S. section 28–477(B). We conclude that although a violation of 28–477(B) is not negligence *per se,* a reasonable jury may find that Sabans were negligent in renting to Fernandez with knowledge that she did not possess a driver's license. We therefore reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

FIDEL, J., concurs.

VOSS, Judge, dissenting.

I must respectfully dissent for two reasons. First, the majority has improperly extended the doctrine of negligent entrustment to cover situations where the entruster has no evidence of the driver's incompetence. Second, the negligence of Karla Fernandez was a superseding cause of the fatal accident.

I agree with the majority's determination that A.R.S. § 28–477(B) is not a safety statute. Accordingly, Sabans must be held to the same reasonable, prudent person standard of care as anyone furnishing an automobile for another's use. Sabans will be liable only if it "furnished an automobile to a person known to [it] to be inexperienced or incompetent as a driver." *Anderson Aviation Sales Co. v. Perez,* 19 Ariz.App. 422, 426, 508 P.2d 87, 91 (1973); *see also Powell v. Langford,* 58 Ariz. 281, 285, 119 P.2d 230, 232 (1941). Because the statute does not establish a standard of care, Sabans' violation of the statute is irrelevant to this matter.

I also agree with the majority that, if Sabans possessed any knowledge indicating Fernandez was incompetent to drive, its duty to protect the public from unreasonable risks of harm may have required it to inquire further. However, Sabans had no such knowledge. The most Sabans knew was that Fernandez was unlicensed. That fact alone is insufficient and the reason is clear.

A statute requiring those who drive vehicles to be licensed does not establish a standard of conduct for the road. Because the licensing statute does not establish a standard of conduct, a violation (i.e., not having a license) is not a breach of any standard of conduct in driving. Charles O. Gregory, *Breach of Criminal Licensing Statutes in Civil Litigation,* 36 Cornell L.Q. 622, 634–35 (1951); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 36 at 226 (5th ed. 1984) (licensing statutes create no liability if the actor is competent but unlicensed).

Because a licensing statute does not tell drivers how to drive and thus does not estab-

lish a standard of conduct, one cannot determine from the mere fact that a driver is unlicensed whether he is incompetent or whether he drove with due care on a particular occasion. Gregory said it best:

An unlicensed driver may be a superb driver; and whether he is or not, he may have driven with due care on the occasion in question. Certainly his not having a license at the time is hardly probative of his not having done so.

Gregory, *supra* at 635.

The majority does not, and cannot, cite any authority that holds that the mere lack of a driver's license is sufficient evidence to support a claim of negligent entrustment. The majority does drop a footnote "in passing" listing cases that have "found entrustment of a vehicle to an unlicensed driver is *some evidence of negligence.*" Ante at 171, n. 4, 933 P.2d at 1239 n. 4 (emphasis added). I do not disagree with any of these authorities as they directly support the dissent. While lack of a license may be "some evidence" of negligence, alone, it simply will not suffice.[7]

The majority first cites *Kauffman v. Gullace*, 252 N.J.Super. 467, 600 A.2d 143 (App. Div.1991). *Gullace* states that entrustment to an unlicensed driver "might be considered negligence." *Id.* 600 A.2d at 147. However, the *Gullace* court's holding is unsupported by any New Jersey case law. In fact, the only case cited by the *Gullace* court to support its assertion is *Townsend v. Great Adventure*, 178 N.J.Super. 508, 429 A.2d 601 (App.Div. 1981). *Townsend* does not support either the *Gullace* court's holding or this court's holding in the majority opinion. In *Townsend*, a claim of negligent entrustment was brought against a father who entrusted his vehicle to his son. The son was operating with a learner's permit, and, as required by the laws of New Jersey, was accompanied by a licensed driver. 429 A.2d at 603. The

court upheld a dismissal of the action against the father. *Id.* at 608. The court stated that "[t]he only fact that appellant showed to support the allegation of [negligent entrustment] was that [son] had no license. In the circumstances of this case such lawful act cannot be held to be negligence." *Id.*

The *Townsend* court never reached the issue whether the mere lack of a license was sufficient to support a claim of negligent entrustment. Such a determination was unnecessary because the father's entrustment was lawful and pursuant to a specific legislative method of training new drivers. *Id.*

The *Gullace* case cited by the majority is unsupported by New Jersey law. It should, therefore, not be used by this court to dramatically change the law of negligent entrustment in Arizona.

The majority cites *Mason v. New*, 475 So.2d 854, 856 (Ala.1985) as holding that the lack of a driver's license may be probative evidence in a negligent entrustment case. However, the same court that decided *New* later decided *Day v. Williams*, 670 So.2d 914 (Ala.1995). In *Day*, the Alabama Supreme Court summarized its holding in *New* as that "the lack of a driver's license, *when combined with other evidence of a driver's lack of skill,* is probative evidence of incompetence in a negligent entrustment claim." *Day*, 670 So.2d at 916 (emphasis added). In our case, the only evidence of incompetence is Fernandez's lack of a driver's license. Additionally, the *Day* court went on to state "even if Thelton had been aware [that Vernon did not possess a driver's license], that alone would not support a finding of negligent entrustment...." *Id.*

Although cited by the majority, the law of Alabama is clearly contrary to the majority's position. Alabama requires that the defendant entrust a vehicle to a driver known to

---

7. Sabans' actions, if true, were simply wrong. However, under the facts here, these activities are not actionable in tort. The legislature recognized this potential problem and prohibited such activity when it enacted A.R.S. § 28–477. The statute imposes a "civil sanction" on any person that rents a vehicle to someone without a driver's license. As the legislature has made such sanctions available to punish and deter this activity, there is no justification for creating a tort remedy as the majority does today.

be incompetent. Mere knowledge that the driver is unlicensed is insufficient to support a claim of negligent entrustment.

Ohio adopted a standard similar to that of Alabama in *Williams v. Bolding,* 6 Ohio App.3d 48, 452 N.E.2d 1346 (1982). Rather than support the majority's holding, *Williams* stands for the proposition that the lack of a driver's license alone is insufficient to support a claim of negligent entrustment. The *Williams* court stated, "[w]hile the mere fact that one does not have a valid Ohio driver's license does not prove negligent entrustment, it is evidence having a bearing upon the issue *when coupled with other evidence* indicating the driver to be inept." 452 N.E.2d at 1348 (emphasis added). Again, the only evidence offered of Fernandez's incompetence was her lack of a driver's license. Under *Williams,* Sabans would be entitled to judgment as a matter of law.

The majority next cites *Johnson v. Owens,* 639 N.E.2d 1016 (Ind.App.1994). *Owens* also fails to support the majority's position. In *Owens,* the court began by stating the general rule that in order to establish a negligent entrustment claim, "the plaintiff must demonstrate that the defendant entrusted the vehicle to a driver with knowledge that the driver was incompetent to drive." *Id.* at 1022. The court then stated that the only possible ground for a claim of negligent entrustment in that case was the driver's lack of a license. The court did not hold that lack of a license was sufficient to support a claim of negligent entrustment. In fact, because the record was insufficient to establish that the entruster knew the driver was unlicensed, the court never reached the issue. No Indiana court has ever held that a claim of negligent entrustment could be based merely on the lack of a driver's license. Indiana, like almost every other state, requires actual knowledge that the driver is incompetent. *Fisher v. Fletcher,* 191 Ind. 529, 133 N.E. 834, 835 (1922); *Stocker v. Cataldi,* 489 N.E.2d 144, 145 (Ind.App.1986). The same Indiana court cited by the majority defines incompetence as "incapacitated (as in the case of intoxication), uninstructed in the use of the vehicle or unfamiliar with the dangers of such use." *Stocker,* 489 N.E.2d at 145. Lack of a license is not incompetence under this standard. The law of Indiana would not support a claim of negligent entrustment under the facts presently before this court.

The majority next cites *Tri–State Truck & Equipment Company v. Stauffer,* 24 Md.App. 221, 330 A.2d 680 (1975). *Stauffer* fails to support the majority's holding for two reasons. First, the case was decided on statutory grounds. Second, newer Maryland cases have held that the lack of a license alone is insufficient to support a claim of negligent entrustment.

Unlike Arizona, which holds that the violation of a safety statute is negligence *per se,* Maryland subscribes to the position that the violation of a safety statute is evidence of negligence. *Stauffer,* 330 A.2d at 684. Therefore, after finding that the renter entrusted a vehicle to an unlicensed driver, the court properly utilized the statutory presumption and held that entrustment to an unlicensed driver is evidence of negligence. *Id.* 330 A.2d at 691. *Stauffer* was decided on statutory grounds rejected by today's majority and is not authority for the majority's holding in a negligent entrustment case.

The Maryland Court of Appeals underscored the distinction between the statutory cause of action and negligent entrustment in *Morrell v. Williams,* 279 Md. 497, 366 A.2d 1040 (1976). The court said, "[t]he critical point is that a violation of § 6–305 of the Motor Vehicle Code requires proof that the owner authorized the use of a motor vehicle by a person whom he knew to be without a license, while the doctrine of negligent entrustment may be invoked only against the vehicle owner who knows or should have known that the use would involve an inordinate risk of physical harm." 366 A.2d at 1043.

The more recent Maryland case of *Herbert v. Whittle,* 69 Md.App. 273, 517 A.2d 358 (1986), reinforces the decision of the *Morrell* court and is directly contrary to the majori-

ty's position in our case. In *Herbert,* a vehicle was entrusted to a young, unlicensed driver. The court held that the "the mere fact that Ms. Whittle did not possess either a learner's permit or a driver's license at the time of the accident is important only as it relates to her inexperience with a standard transmission automobile." *Id.* 517 A.2d at 363. Had the law of Maryland been that the entrustment to an unlicensed driver alone is evidence of negligent entrustment, the evidence would have been important regardless of whether Ms. Whittle was inexperienced.

Finally, the majority cites *LaRoque v. Sanchez,* 641 S.W.2d 298 (Tex.App.1982). Although at first blush this case appears to support the majority's position, further analysis reveals that Texas utilizes an entirely unique test for negligent entrustment. Under Texas law, negligent entrustment consists of: "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence proximately caused the accident." *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 571 (Tex.1985); *see also Dalworth Trucking Co. v. Bulen,* 924 S.W.2d 728, 734 (Tex.App.1996). Unlike the majority of other states, including Arizona, Texas specifically recognizes entrustment to an unlicensed driver as an element of negligent entrustment. *Williams,* 699 S.W.2d at 571; *Bulen,* 924 S.W.2d at 734. Texas, unlike Arizona, does not require entrustment to an *incompetent* driver. *See Anderson Aviation Sales Co.,* 19 Ariz.App. at 426, 508 P.2d at 91; *Powell,* 58 Ariz. at 285, 119 P.2d at 232. Because Texas employs a negligent entrustment standard with entirely different elements, Texas case law on this point is not authority for Arizona negligent entrustment cases. However, even if Texas law were authority in Arizona, the law is contrary to the majority's holding. By specifically enumerating both "unlicensed" and "incompetent" in the test for negligent entrustment, Texas courts are recognizing that "unli-

censed" does not necessarily mean "incompetent."

Other states specifically addressing the issue have held that the mere lack of a driver's license is insufficient to support a claim of negligent entrustment. *Day v. Williams,* 670 So.2d at 916 ("even if Thelton had been aware [driver did not possess a driver's license], that alone would not support a finding of negligent entrustment"); *Guay v. Winner,* 189 A.D.2d 1081, 593 N.Y.S.2d 95, 97 (1993) (where the facts were that the driver was young, inexperienced and did not have a valid license, court stated the entruster "had no reason to suspect incompetency, nor has any incompetency been demonstrated"); *Spencer v. Gamboa,* 102 N.M. 692, 699 P.2d 623, 625 (1985) (where claim of negligent entrustment based only on furnishing car to unlicensed driver, court held plaintiff had "presented no evidence that the defendant knew or should have known [driver] was an incompetent driver"); *see also Johnson v. Lanier,* 140 Ga.App. 522, 231 S.E.2d 428, 430 (1976) ("As regards the contention that appellee was liable based upon a negligent entrustment of the tractor to [driver], an inexperienced, youthful and unlicensed driver, under Georgia law, actual knowledge of the dangerous potential of the entrusted driver is necessary to impose liability … "); *Dukes v. McGimsey,* 500 S.W.2d 448, 451–52 (Tenn.App.1973) ("The authorities herein cited will not permit an inference of negligent entrustment by the mere proof … the borrower did not have a driver's license.").

It is clear that the lack of a license is not evidence of incompetence. *Lutfy v. Lockhart,* 37 Ariz. 488, 493, 295 P. 975, 977 (1931); *Christy v. Baker,* 7 Ariz.App. 354, 357, 439 P.2d 517, 520 (1968); *see also* Gregory, *supra* at 635. The majority, nevertheless, holds that Sabans may have had a duty to inquire further "when Fernandez revealed she did not possess a license." *Ante* at 171, 933 P.2d at 1239. The majority's analysis raises an obvious question: If the lack of a license is not evidence of incompetence, what triggered Sabans' duty to inquire? The majority does not, and cannot, answer this question.

Moreover, a holding that the mere lack of a license triggers a duty to inquire is not supported by existing case law. In *Christy*, this court addressed the same legal and factual issues presented by this case. Although the majority found it easy to "reject the rationale" (*ante* at 167, 933 P.2d at 1235) of *Christy*—I cannot. Sound jurisprudential policy will cause the court to abandon substantive precedent only when the reasons for it have ceased to exist or it appears to be clearly erroneous. *White v. Bateman*, 89 Ariz. 110, 114, 358 P.2d 712, 714 (1961); *see also State v. Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992), *cert. denied*, 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). The majority has not demonstrated either basis here.

In both *Christy* and the instant case, the facts are· indistinguishable in every relevant area. The renter knew it was renting to a driver unable to produce a valid driver's license. *See Christy*, 7 Ariz.App. at 355, 439 P.2d at 518. Additionally, in each case, had the renter inquired further, it would have discovered the driver had lost the license because of a DUI conviction. *See id.* The majority's claim that "it was merely fortuitous that [Walk's] license had been revoked," *ante* at 170, 933 P.2d at 1238, is, at best, disingenuous. Walk lacked a license because he was convicted for DUI and failed to appear at the required hearing. 7 Ariz.App. at 355, 439 P.2d at 518. This fact is no more fortuitous than Fernandez lacking a license because the legislature "fortuitously" increased the penalty for a DUI conviction. Walk and Fernandez lacked a driver's license for the same reason: a DUI conviction. The majority asserts that Christy "had no reason to foresee an unreasonable risk of harm when he rented to Walk, a driver he knew from prior experience to be competent." *Ante* at 170, 933 P.2d at 1238. However, Christy, like Sabans, knew that Walk could not produce a valid driver's license. Christy had as much evidence of Walk's incompetence as Sabans had of Fernandez's incompetence. If Fernandez's lack of a license was

a red flag triggering a duty to inquire, Walk was waving that same red flag. The *Christy* court had the opportunity to find a duty to inquire under the same facts. The *Christy* court refrained from doing so, and we should follow their lead.

The majority also cited *Restatement (second) Torts* § 308. This section of the *Restatement*, which was not cited by either party to this litigation, in part provides: "It is negligence to permit a third person to use a thing ... if the actor knows or should know that such person intends or is likely to use the thing in such a manner as to create an unreasonable risk of harm to others." I agree completely with the legal proposition stated in *Restatement (second) Torts* § 308. The legal proposition, however, does not support the majority's decision.

The *Restatement* requires that the actor knew or should have known that the person to whom the actor is entrusting the vehicle would use it in such a manner as to create an unreasonable risk of harm to others. Comment c to the *Restatement* refers us to § 307, comment a, for the factors that should be considered when determining whether the actor should realize that a third person is likely to use a thing in a manner that creates an unreasonable or dangerous risk of harm to others. Comment a describes an assumption that if a particular undertaking is reasonably capable of safe performance by a person of normal competence and skill, there is generally no negligence. To avoid this presumption, there must be evidence that the actor knew the person was "subnormal." The *Restatement* analysis lends the same support to the dissent that the case law does.

Here, there is no evidence other than the mere lack of a license. Even the majority agrees "that the mere absence of a valid driver's license is not necessarily indicative of a person's driving skills." *Ante* at 171, 933 P.2d at 1239. There is no evidence in the record that Fernandez was impaired in any way.

Notably, the majority has expanded the doctrine of negligent entrustment in a case

where Sabans' duty is not even at issue.[8] The issue of Sabans' duty was not the basis of the trial court's grant of summary judgment, was not briefed on appeal, and was not argued at oral argument. We did not ask for any additional briefing on the issue. The sole issue on appeal is whether Sabans' negligence in renting a vehicle to Fernandez was the proximate cause of Tellez's injury.

In the present case, Pitts accommodated Fernandez and rented the car for a single day.[9] However, Fernandez refused to return the car and absconded with it for several days. During these several days, Fernandez drove the car to Tucson, returned the following day, drove the car around Phoenix looking for a job and a new place to live, and allowed several friends to drive the car. Pitts informed Sabans that he was unable to regain possession of the car from Fernandez. Sabans told Pitts that Pitts was responsible for returning the car because Pitts's name was on the contract. Pitts was unsuccessful in regaining possession of the car. On the night of the accident, Fernandez drank heavily at a party at her house and then, despite warnings from her friends not to drive, drove to a bar and drank Long Island Iced–Teas for three hours. When she left the bar she drove to a 7–Eleven and purchased beer. Shortly thereafter, she ran a red light and collided with Tellez's vehicle. Following the accident, marijuana was found in the car. The accident occurred eight days after the car was rented and seven days after it was to be returned to Sabans. Fernandez had put almost 1,000 miles on the vehicle.

Sabans can only be liable if its negligence proximately caused the later accident. The majority accurately sets forth the test for proximate cause. A party's negligence is a proximate cause of an injury if:. (1) the conduct is a cause in fact of the injury; and (2) either the intervening acts were foreseeable by a reasonable person or were not extraordinary in hindsight. *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990).

The majority's proximate cause analysis is puzzling in light of its earlier statements regarding the effect of the licensing statute. In the negligence *per se* analysis, the majority says that had the legislature wanted the statute to establish a standard of care it could have established that as the standard— but did not. *Ante* at 168–169, 933 P.2d at 1236–37. Further, that A.R.S. § 28–477 was not intended to protect any particular individual or class of persons from harm. The majority concludes: "Therefore, we find no reason to allow the breach of this statute, which the legislature punishes as a fine, to create a cause of action in tort for these plaintiffs." *Ante* at 169, 933 P.2d at 1237.

After articulating this, the majority attempts to breathe some life back into the statute in support of its analysis of proximate cause. Here, the majority boldly states that "[t]he legislature declared by the enactment of A.R.S. § 28–477(B) that renting automobiles to unlicensed drivers increases the risk of harm to the public." *Ante* at 173, 933 P.2d at 1241. This conclusion is not supported by citation to any authority and is inconsistent with the majority's analysis on the negligence *per se* issue. The majority cannot have it both ways and I respectfully submit that the majority got it right the first time.

The majority states that the supreme court in *Quintero v. Continental Rent–A–Car Sys-*

---

8. It has been long established that an appellate court will not consider a question not first raised in the lower court. *Town of South Tucson v. Board of Supervisors*, 52 Ariz. 575, 84 P.2d 581 (1938). Intuitively, this rule has extended to issues not even raised by parties in their briefs on appeal. *State v. Gortarez*, 141 Ariz. 254, 262, 686 P.2d 1224, 1232 (1984). This court has recognized the imprudence in an appellate court considering new issues *sua sponte*, unless required by statute or public policy. *Kalil Bottling Co. v. Burroughs Corp.*, 127 Ariz. 278, 281, 619 P.2d 1055, 1058 (App.1980). The reason underlying

these principles is plain. If the issues had been raised at trial, opposing counsel would have been given an opportunity to directly respond, potentially causing different results at the trial and reviewing courts.

9. Because of the procedural posture of this case we assume, as we must, that Sabans rented the car to Pitts with knowledge that it was to be used by Fernandez. *See Ontiveros v. Borak*, 136 Ariz. 500, 503, 667 P.2d 200, 203 (1983).

*tem, Inc.*, 105 Ariz. 135, 460 P.2d 189 (1969), did "not say that no proximate cause existed between Continental's negligence and Walk's death." *Ante* at 168, n. 2, 933 P.2d at 1236, n. 2. I disagree.

Walk died in the automobile accident and his survivors sued Continental for negligently renting the automobile to someone Continental knew to be intoxicated at the time and who did not possess a driver's license. The complaint alleged that Walk "drove said automobile on a public highway ... in a reckless and negligent manner, causing a collision and resulting in his death." *Id.* at 136, 460 P.2d at 190.

Noting that the parties have completely and extensively briefed such issues as negligent entrustment, contributory negligence, and imputed negligence, the court concluded:

> In our view of the case, these issues need not be considered because the complaint itself in the language we have italicized above, clearly sets out facts which compel the conclusion that Walk's negligence and reckless driving *was the proximate cause* of [Walk's] death. *Id.* (emphasis added).

The supreme court clearly resolved the proximate cause issue. Walk's accident, like Fernandez's, was caused entirely by their acts. Two facts are inescapable in each case. First, the only link between the accident in Continental and Sabans is the fact that the renters did not have a license. Second, there is absolutely no evidence that the lack of the license had anything to do with causing the accident.

The supreme court also dealt with this issue in *Mutz v. Lucero*, 90 Ariz. 38, 365 P.2d 49 (1961). In *Mutz*, plaintiff sued defendant for negligently causing the death of her husband in an automobile/motorcycle accident. The trial court directed a verdict for defendant and plaintiff appealed. On appeal, plaintiff argued that the trial court erred by refusing to admit evidence that defendant had failed to qualify for an Arizona operator's license. *Id.* at 41, 365 P.2d at 51. Plaintiff argued that defendant's failure to possess a driver's license was evidence of his negligence. The supreme court disagreed.

The evidence shows that the illegality of the *defendant's act was a mere condition and not a cause of the accident.* It is only when there is a proximate causal connection between the violation of the license statute and the injury complained of that the violation is admissible as evidence of negligence.

*Id. (emphasis added).*

The lack of a license had nothing to do with proximate cause in the aforementioned cases, and it has nothing to do with proximate cause in this case. Sabans did not proximately cause Tellez's injury. The negligence of Fernandez was a superseding intervening cause in Tellez's injury. No reasonable person in Sabans' position could foresee that renting a car to Fernandez, through Pitts, for one day, would result in Fernandez absconding with the car, getting heavily intoxicated, running a red light, and colliding with another vehicle eight days later. No reasonable person could even foresee that Fernandez would still be in possession of the car eight days later, let alone that she would drive the car negligently.

## CONCLUSION

"Most licensing statutes, such as those applicable to automobile drivers ... have been construed as intended only for the protection of the public against injury at the hands of incompetents, and to create no liability where the actor is in fact competent but unlicensed." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts*, § 36 at 226 (5th ed. 1984). Here, there is no evidence suggesting Sabans had knowledge that Fernandez was an incompetent driver. "While possession of an operator's license, regularly issued, might be some evidence of his competency, the lack of such license would be no evidence whatever that he was not a capable, skilled, and safe driver." *Christy*, 7 Ariz. App. at 357, 439 P.2d at 520 (quoting *Lutfy v. Lockhart*, 37 Ariz. at 493, 295 P. at 977). At most, Sabans knew Fernandez lacked a license. Without some knowledge of incompetence, Fernandez's activities were not

foreseeable. I, therefore, agree with the following statement in *Christy:*

> The fact that [Fernandez] did not have a valid license did not make [her] incompetent to drive.... The defendant could not have foreseen that the injury which occurred would be a likely result of his act in leasing the car. *The accident would have occurred whether or not [Fernandez] had a valid driver's license in [her] possession.*

7 Ariz.App. at 357–58, 439 P.2d at 520–21 (emphasis added). Additionally, these same facts compel a finding that the intervening acts were abnormal and extraordinary.

Allowing a jury to find negligence based on nothing more than Sabans' renting to an unlicensed driver, regardless of the driver's actual competence, converts the rental company into an insurer for any negligent act committed by the driver. In *Christy,* we rejected the rationale adopted by today's majority stating, "[w]e are not prepared to legislate strict tort liability by judicial decision...." 7 Ariz.App. at 356, 439 P.2d at 519. Today's majority recognizes no such restraint.

Because I believe the trial court correctly granted summary judgment for Sabans, I would affirm.