NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOSHUA WING, et al., *Plaintiffs/Appellants*,

*v.*

U-HAUL INTERNATIONAL, INC., et al, *Defendants/Appellees*.

No. 1 CA-CV 18-0765
FILED 2-18-2020

---

Appeal from the Superior Court in Maricopa County
No.  CV 2016-050917
The Honorable Theodore Campagnolo, Judge

**VACATED AND REMANDED**

---

COUNSEL

Wagstaff & Cartmell, LLP, Kansas City, MO
By Jonathan P. Kieffer, Jack T. Hyde
*Co-Counsel appearing Pro Hac Vice for Plaintiffs/Appellants*

Garrey Woner Hoffmaster & Peshek PC, Scottsdale
By D. Reid Garrey, Erin M. Evans
*Co-Counsel for Plaintiffs/Appellants*

Bowman and Brooke LLP, Phoenix
By Travis M. Wheeler
*Co-Counsel for Defendants/Appellees*

Thorpe Shwer PC, Phoenix
By Ryan S. Patterson
*Co-Counsel for Defendants/Appellees*

Lightfoot Franklin White LLC, Birmingham, AL
By J. Banks Sewell, III, Joel Chandler Bailey, David A. Rich
*Co-Counsel appearing Pro Hac Vice Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

**¶1**         Joshua and Clayton Wing (collectively, "the Wings") appeal from a judgment entered in favor of U-Haul International, Inc., et al., ("U-Haul") following a jury verdict. Because the negligence per se jury instructions contained erroneous "no fault" language, we vacate the judgment and remand for a new trial on the Wings' claim of negligence per se.

**BACKGROUND**

**¶2**         After loading a Toyota 4Runner onto a single axle tow dolly rented from U-Haul and attached to a Dodge Ram pickup truck by U-Haul personnel, Mathew Delcollo and Joshua Wing embarked on a road trip from Oregon to Texas. While traveling on an Arizona highway on the second day of their journey, Delcollo lost control of the Dodge Ram and the vehicle combination (pickup truck and tow dolly) careened off the highway and repeatedly rolled. Wing was ejected from the truck and sustained severe injuries, including paralysis.

**¶3**         The Wings sued U-Haul, alleging the tow dolly's lack of brakes substantially contributed to the accident. Following protracted litigation, the superior court granted the Wings' motion for partial summary judgment and found, as a matter of law, that A.R.S. § 28-952(A)(3) required the tow dolly at issue "to be equipped with brakes." At trial, the

2

parties presented competing expert opinion testimony on the primary issue —whether the absence of tow dolly brakes caused and/or contributed to the accident. After a 14-day trial, the jurors returned a general verdict in favor of U-Haul. In its final judgment, the superior court confirmed the jury's defense verdict and awarded U-Haul its taxable costs. The Wings timely appealed.

## DISCUSSION

**¶4**        The Wings argue the jury's verdict, upon which the judgment is based, must be overturned because the superior court: (1) provided erroneous negligence per se jury instructions; (2) improperly excluded evidence that U-Haul's representatives lied to the Arizona legislature when they lobbied to amend A.R.S. § 28-952; and (3) erroneously excluded evidence of other similar accidents. We address each claim in turn.

### I.        Negligence Per Se Jury Instructions

**¶5**        The Wings contend the superior court included erroneous language in its preliminary and final instructions to the jury on negligence per se. According to the Wings, these erroneous instructions allowed U-Haul to improperly argue that it was not at fault for violating the statutory brake requirement. In response, U-Haul argues: (1) the given instructions properly stated the law; (2) the Wings waived their challenge by failing to move for a new trial; and (3) the Wings were not entitled to negligence per se instructions and therefore any error in the given instructions was necessarily harmless.

**¶6**        Based on the superior court's partial summary judgment ruling that U-Haul was statutorily required to equip the tow dolly at issue with brakes, the Wings proposed the following preliminary instructions:

> On Plaintiffs' claim of fault for negligence per se, Plaintiffs have the burden of proving:
>
> 1. U-Haul['s] negligence was a cause of Plaintiffs' injuries; and
>
> 2. Plaintiffs' damages.
>
> . . .
>
> NEGLIGENCE 1 Violation of Statute (Negligence Per Se)

> I am now going to instruct you on certain laws of the State of Arizona. When a person violates these laws, that person is negligent.
>
> When it is operated on a highway, a trailer or semitrailer with a gross weight of three thousand pounds or more shall be equipped with brakes that are adequate to control the movement of and to stop and to hold the vehicle.
>
> It has been established as a matter of law that Defendants' tow dolly at issue in this case was a trailer or semitrailer, had a gross weight of three thousand pounds or more, and was required to be equipped with brakes that were adequate to control the movement of and to stop and to hold the vehicle.
>
> The tow dolly at issue in this case was not equipped with brakes.
>
> You should determine whether Defendants' negligence was a cause of injury to Plaintiffs.

¶7            U-Haul objected to the proposed instructions, primarily challenging the superior court's ruling that the tow dolly was subject to A.R.S. § 28-952(A)(3)'s brake requirement. Without relinquishing that claim, U-Haul urged the court to include language that would permit the jury "to find that the [statutory] violation was excusable." In response, the Wings argued that inclusion of "excuse" language was inappropriate because U-Haul had made no attempt to comply with the statutory requirement.

¶8            Acknowledging that "excuse" language did not entirely "fit" the "facts" of the case, the superior court nonetheless "err[ed] on the side of caution" and fashioned the following negligence per se preliminary instruction for the jury:

> It has been established as a matter of law that the tow dolly in this case loaded with a Toyota [4R]unner, which exceeded a total weight of 3,000 pounds, was required to be equipped with brakes that were adequate to control the movement of and to stop and to hold the vehicle and that were designed to either be applied by the driver of the towing motor vehicle from its cab or be of a type that operates automatically when the service brakes of the towing motor vehicle are applied. The tow dolly in this case was not equipped with brakes.

Defendants have the burden of proving that their failure to equip the tow dolly with brakes as required by law was not Defendants' fault. If Defendants do not meet their burden, then on Plaintiffs' claim of fault for negligence per se, Plaintiffs have the burden of proving:

1. U-Haul['s] negligence was a cause of Plaintiffs' injuries; and

2. Plaintiffs' damages.

¶9　　　　During opening statements, defense counsel told the jurors the evidence would show that U-Haul's tow dolly was safe and "didn't need brakes." According to defense counsel, the statutory requirement for brakes was enacted to ensure that vehicles meet a certain "stopping distance standard," and because the tow dolly design met that standard, brakes were unnecessary. In addition, and notwithstanding the superior court's partial summary judgment ruling, defense counsel presented the jury with U-Haul's understanding that A.R.S. § 28-952 does not apply to tow dollies.

¶10　　　　Consistent with this opening statement, defense counsel elicited testimony from both U-Haul's chairman and director of engineering that, to their knowledge, no individual or entity had previously asserted tow dollies are subject to A.R.S. § 28-952. In fact, when questioned specifically about governmental regulation, the chairman testified that no law enforcement authority had ever cited U-Haul or a renting customer for operating tow dollies in Arizona without brakes.

¶11　　　　Over the Wings' objection, the superior court provided the jury the following final instruction regarding negligence per se:

Violation of Statute

I am now going to instruct you on certain laws of the State of Arizona. If you find from the evidence that a person has violated any of these laws, that person is negligent.

You should determine whether Defendants' negligence was a cause of injury to Plaintiffs.

When it is operated on a highway, a trailer or semitrailer with a gross weight of three thousand pounds or more shall be

equipped with brakes that are adequate to control the movement of and to stop and to hold the vehicle.

This Court has already determined as a matter of law that this tow dolly, under the laws of the State of Arizona, was required to be equipped with brakes.

The tow dolly in this case did not have brakes. Ignorance of the law is not an excuse for a violation of the law.

Defendants have the burden of proving that their failure to equip the tow dolly with brakes was not Defendants' fault. If Defendants do not meet their burden, then on Plaintiffs' claim of fault for violation of the statute, Plaintiffs have the burden of proving:

1.  U-Haul['s] negligence was a cause of Plaintiffs' injuries; and

2.  Plaintiffs' damages.

**¶12**      Alluding to this final jury instruction during closing argument, defense counsel told the jurors that U-Haul disagreed with the superior court's ruling that tow dollies are statutorily required to have brakes. Citing the trial testimony that no governmental entity had previously applied the statutory brake requirement to tow dollies, defense counsel asserted no fault could be ascribed to U-Haul for its failure to install brakes on the tow dolly at issue.

**¶13**      We review de novo whether jury instructions accurately state the law. *Stafford v. Burns*, 241 Ariz. 474, 478, ¶ 10 (App. 2017). In assessing accuracy, "the test is whether, considering the instructions as a whole, the challenged instructions mislead the jury as to the proper rules of law." *Life Inv'rs Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 532 (App. 1995) (internal quotation omitted). "An instruction will warrant reversal only if it was both harmful to the complaining party and directly contrary to the rule of law." *State Farm Fire & Cas. In. Co. v. Grabowski*, 214 Ariz. 188, 192, ¶ 13 (App. 2007). "We will not overturn a jury verdict on the basis of an improper instruction unless there is substantial doubt regarding whether the jury was properly guided in its deliberations." *Id.*

**¶14**      Negligent conduct "falls below the standard established by law" to protect "others against unreasonable risk of harm." *Tellez v. Saban*, 188 Ariz. 165, 169 (App. 1996). Upon determining that a "statute's purpose

is in part to protect a class of persons that includes the plaintiff" from "the type of harm that occurred," a court may adopt the statute as the relevant standard of care in a negligence action. *Id.*

**¶15** The negligence per se doctrine allows a plaintiff to establish the elements of duty and breach in a negligence claim by proving the defendant violated the statute that supplies the relevant duty of care. *See Crown v. Raymond*, 159 Ariz. 87, 89 (App. 1988). "Violation of the statute thus stamps the defendant's conduct as negligence *per se*[] but will not render the defendant liable to the plaintiff unless the violation is the legal cause of the plaintiff's injury and no other defenses negate liability." *Tellez*, 188 Ariz. at 169 (internal quotation omitted).

**¶16** To evaluate whether the challenged instructions correctly informed the jurors that a party may overcome a technical violation of the statutory brake requirement by demonstrating lack of fault for non-compliance, we consider a series of cases involving negligence per se under A.R.S. § 28-952. In *Dayton v. Palmer*, 1 Ariz. App. 184, 185 (1965), a driver caused an accident after his brakes failed. Notwithstanding the driver's technical violation of A.R.S. § 28-952, the superior court denied the plaintiff's motion for a directed verdict on negligence. *Id.* On appeal, this court upheld the superior court's denial, reasoning the specific facts of the case presented "sufficient evidence of lack of fault on the [driver's] part to present a jury question on liability." *Id.* at 187. In reaching this conclusion, the court acknowledged that a violation of A.R.S. § 28-952 constitutes negligence per se, but determined that "the mere fact that [a] defendant's brakes failed is not necessarily a violation within the intended meaning of [the statute] when there was sufficient evidence from which the jury might find that the brake failure was not due to any fault of the defendant." *Id.* Likewise, in *O'Donnell v. Maves*, 108 Ariz. 98, 99 (1972), the supreme court upheld the denial of a directed verdict on an A.R.S. § 28-952 violation, explaining a directed verdict is only warranted when the defendant admits the violation and "fails to offer any legal excuse" for the negligence. In that case, the defendant's brakes "had failed due to a rupture caused by the rubbing of the gasoline tank against the brake line," a circumstance the defendant could not have reasonably detected. *Id.* The supreme court held that once a technical violation of A.R.S. § 28-952 has been established, "the burden shifts to [the] defendant" to prove "his failure to comply with the statute was without fault." *Id.* at 100. "[I]f there is sufficient evidence from which the jury could find that the brake failure was not due to the fault of the defendant, it then becomes a question of fact for the jury to decide whether fault in fact existed." *Id.*

¶17        Turning from cases involving requests for directed verdicts to requests for jury instructions, in *Platt v. Gould*, 26 Ariz. App. 315, 316 (1976), the defendant had trouble with her brakes the day before she caused the accident at issue. After a jury verdict for the plaintiff, the defendant appealed the denial of her request for a jury instruction that a brake failure, alone, is not a violation of A.R.S. § 28-952. *Id.* This court upheld the denial of her requested instruction, holding a violation of A.R.S. § 28-952, absent some "legal excuse," constitutes negligence as a matter of law, and the defendant's prior knowledge of her brake problem foreclosed any "issue of legal excuse to submit to the jury." *Id.* at 316–17. By comparison, in *Bliss v. Treece*, 134 Ariz. 516, 518 (1983), the defendant was unable to prevent his vehicle's collision with the plaintiff's car, notwithstanding his application of his vehicle's brakes. After a defense verdict, the plaintiff appealed the superior court's denial of her request for a negligence per se instruction. *Id.* at 517, 520. The supreme court affirmed, however, concluding there was no clear evidence of brake failure, and reasoning that "the legislature intended to impose liability only if the motorist knew or should have known of the problem and/or otherwise failed to operate or maintain his brakes in a reasonable manner." *Id.* at 520.

¶18        Distilled, these cases hold that a violation of A.R.S. § 28-952 is negligence per se, but such statutory non-compliance may be excused when a defendant, though diligent and reasonable, was unable to comply with the statute. *See Brannigan v. Raybuck*, 136 Ariz. 513, 517 (1983). In other words, when circumstances beyond a defendant's knowledge or control prevent compliance, the statutory violation is legally excused. *See id.* Importantly, none of these cases suggest a statutory violation is legally excused when a defendant is merely ignorant of the law or the scope of its application.

¶19        Read in light of these cases, the superior court's negligence per se jury instructions correctly stated the law. In both the preliminary and final instructions, the court told the jurors that U-Haul had violated the law by failing to equip the tow dolly at issue with brakes and therefore bore the burden of proving that it was not at fault for its statutory non-compliance. These instructions are entirely consistent with the governing caselaw.

¶20        The Wings do not contest the legal accuracy of the given instructions. Rather, the Wings contend, as a matter of law, that U-Haul was not entitled to legal excuse language because no evidence supported a finding that U-Haul had reasonably and diligently attempted to comply with the law and somehow failed to do so through no fault of its own.

¶21        While a party must move for a new trial to preserve a claim that insufficient evidence supported a given jury instruction, a purely legal challenge to a jury instruction may be preserved for appellate review through a specific objection in the superior court. *See* A.R.S. § 12-2102(A) ("Upon an appeal from a final judgment, the supreme court shall review any intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error, whether a motion for a new trial was made or not."); *see also Lewis v. S. Pac. Co.*, 105 Ariz. 582, 583 (1970) (explaining a party need not move for a new trial to preserve a challenge to "the legality" of given instructions on appeal).

¶22        In this case, U-Haul failed to present *any* evidence that it attempted to comply with A.R.S. § 28-952 but was unable to do so. Instead, and notwithstanding the superior court's partial summary judgment ruling, U-Haul argued A.R.S. § 28-952 does not apply to tow dollies, or at a minimum, that U-Haul reasonably believed it does not. Although U-Haul admitted it was aware of the statutory brake requirement and asserted it complied with A.R.S. § 28-952 with respect to its other rental vehicles, at its core, U-Haul nonetheless presented an "ignorance of the law" argument. In other words, defense counsel put forward an alternative interpretation of A.R.S. § 28-952 that absolved U-Haul of fault and argued U-Haul's ignorance of the scope and application of the statute was excusable. This is not the type of "legal excuse" contemplated by any of the controlling caselaw. Instead, read together, the cases stand only for the proposition that an inability to comply with the statute, notwithstanding one's diligent and reasonable attempts to do so, may be excused.  In contrast to the controlling caselaw, U-Haul, without question, made no attempt to comply with A.R.S. § 28-952 with respect to its tow dollies, having previously adopted a policy to systematically remove its tow dollies' brakes.

¶23        Because U-Haul failed to present the *type* of evidence that could support a legal excuse instruction, the superior court did not engage in a qualitative evidentiary inquiry to evaluate U-Haul's request for "no fault" language, and therefore the Wings were not required to move for a new trial to preserve their challenge. On this record, and as a matter of law, the inclusion of the "no fault" language in the negligence per se jury instructions was legally incorrect.

¶24        Nonetheless, asserting the Wings were not entitled to negligence per se jury instructions, U-Haul argues any error in the given instructions was necessarily harmless. Specifically, U-Haul contends, as it

did in opposition to the motion for partial summary judgment, that tow dollies are not subject to A.R.S. § 28-952's brake requirement.

¶25        "We interpret statutes and review summary judgment rulings de novo." *Wilks v. Manobianco*, 237 Ariz. 443, 446, ¶ 8 (2015). "When interpreting a statute, our primary goal is to give effect to the legislature's intent." *Id.* (internal quotation omitted). "We derive that intent by examining the statute's language; if the language is ambiguous, we look to the statute's history, context, consequences, and purpose." *Id.* When statutes relate to the same subject or the same general purpose, they "should be read in connection with, or should be construed with other related statutes, as though they constituted one law." *Pinal Vista Properties, L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10 (App. 2004) (internal quotation omitted). "Further, each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant." *Id.* (internal quotation omitted).

¶26        Under A.R.S. § 28-952(A)(3), trailers and semitrailers operated on highways, "with a gross weight of three thousand pounds," must "be equipped with brakes that are adequate to control the movement of and to stop and to hold the vehicle." To comply with the statute, the brakes must be "designed to either be applied by the driver of the towing motor vehicle from its cab or be of a type that operates automatically when the service brakes of the towing motor vehicle are applied." *Id.*

¶27        Pursuant to the definitional statutes in effect at the time of the accident: (1) a "vehicle" is "a device in, on or by which a person or property is or may be transported or drawn on a public highway"; (2) a "semitrailer" is "a vehicle that is with or without motive power, other than a pole trailer, that is designed for carrying persons or property and for being drawn by a motor vehicle and that is constructed so that some part of its weight and that of its load rests on or is carried by another vehicle"; and (3) a "trailer" is "a vehicle that is with or without motive power, other than a pole trailer, that is designed for carrying persons or property and for being drawn by a motor vehicle and that is constructed so that no part of its weight rests on the towing vehicle." A.R.S. § 28-101(48), (55), (58) (2013); 2013 Ariz. Sess. Laws, ch. 129, § 1.

¶28        Reading A.R.S. § 28-952(A)(3) in light of these definitional provisions, a device that is designed to be drawn by a motor vehicle and carry persons or property, whether some or none of its weight rests on a towing vehicle, must be equipped with brakes when operated on highways if the total weight of the loaded device is three thousand pounds or more.

It is undisputed that tow dollies are devices designed to be drawn by a motor vehicle and transport property. Therefore, on its face and given a plain reading, A.R.S. § 28-952(A)(3) encompasses tow dollies, whether classified as trailers or semitrailers.

**¶29**        Despite the broad statutory definitions of vehicle, semitrailer, and trailer set forth in A.R.S. § 28-101 (2013), U-Haul contends that other, related statutory language clarifies that a tow dolly may not be classified as a trailer or semitrailer. First, U-Haul points to A.R.S. § 28-101(55)'s definition of trailer, which also states that a "semitrailer equipped with an auxiliary front axle commonly known as a dolly is deemed to be a trailer." 2013 Ariz. Sess. Laws, ch. 129, § 1. According to U-Haul, this additional language in the definitional provision demonstrates that a tow dolly is statutorily distinct from a semitrailer or trailer. Advancing the same reasoning, U-Haul cites A.R.S. § 28-1095(G)(1), which states that the limitations on the length of various trailer and semitrailer combinations set forth in subsections (B) and (C) do not preclude a motor vehicle from pulling "one single-axle tow dolly on which a motor vehicle may be transported." While these provisions demonstrate that a tow dolly is not statutorily synonymous with a trailer or a semitrailer, neither statute excludes tow dollies from either the semitrailer or trailer classifications. Instead, read in harmony with A.R.S. § 28-101's other provisions clearly encompassing a tow dolly, the language cited in A.R.S. §§ 28-101(55), -1095(G) reflects that tow dollies fall within a subset category of either trailers or semitrailers.

**¶30**        Furthermore, as noted by the Wings, had the Arizona legislature intended to exempt tow dollies from the statutory brake requirement, it could have expressly done so. For example, in A.R.S. § 28-2153(A) and A.R.S. § 28-2153(D)(8)(d), the legislature made clear that single axle tow dollies are not subject to the general registration requirement for motor vehicles, trailers, and semitrailers. Likewise, the statutory definitions of semi-trailer and trailer set forth in A.R.S. § 28-101(48) and A.R.S. § 28-101(55) expressly exclude pole trailers, demonstrating that the legislature contemplated the vehicles that fell within those broad definitions and opted to exempt only one.

**¶31**        Given the plain language of A.R.S. § 28-952(A)(3), the definitional provisions in effect at the time of the accident, and the broader statutory scheme regulating transportation, the tow dolly at issue was

statutorily required to be equipped with brakes.[1] Therefore, contrary to U-Haul's contention, the superior court did not err by providing negligence per se jury instructions, but, as noted above, its inclusion of legal excuse language was erroneous. Specifically, the portion of the instruction stating, "Defendants have the burden of proving that their failure to equip the tow dolly with brakes was not the Defendants' fault," was incorrect.

**¶32** Citing *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 584, ¶ 27 (App. 2003) and *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 155 Ariz. 239, 242–43 (App. 1987), U-Haul contends the jury's defense verdict on the Wings' product liability claim refutes any argument that the jurors may have reached a different verdict on the Wings' negligence per se claim had the superior court provided proper jury instructions. The cases U-Haul cites are inapposite, however, and stand only for the proposition that a jury cannot logically and consistently find for a defendant on a claim of strict liability while simultaneously finding for a plaintiff on a claim of negligent design. *Golonka*, 204 Ariz. at 584, ¶ 27; *Gomulka*, 204 Ariz. at 243. Had the jurors properly been instructed in this case that the negligence elements of duty and breach had been categorically established, they may have found that the Wings proved causation on the negligence per se claim—without contradicting their verdict on the strict liability claim. Likewise, U-Haul's reliance on *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 341 (App. 1983), for the proposition that the instructional error at issue was harmless, is misplaced. In that case, this court upheld the superior court's denial of a defense motion for a judgment as a matter of law after several counts were submitted to the jury and the jurors returned a general verdict *against* the defense. *Id.* In affirming the court's denial, we noted that the general verdict could be upheld if there was sufficient evidence to sustain the verdict on any count, even if there was insufficient evidence to sustain the verdict on other counts. *Id.* In this case, the inverse is true—the general verdict *for* the defense must be overturned if the instructional error invalidated the verdict as to any count.

**¶33** On this record, we cannot say that the errant jury instructions were harmless. Had the jurors properly been instructed, the only issue before them on the Wings' negligence per se claim would have been causation (as relevant here, damages were not disputed). Because the parties submitted competing expert opinion testimony regarding causation, it is not clear on this record that the jury would have returned a

---

[1] Although U-Haul initially challenged the superior court's partial summary judgment ruling that the loaded tow dolly at issue weighed in excess of 3,000 pounds, it has not challenged that ruling on appeal.

general defense verdict absent the faulty instruction. Therefore, reversal is warranted. *See Salt River Project Agric. Imp. and Power Dist. v. Westinghouse Elec. Corp.*, 176 Ariz. 383, 388 (App. 1993) ("Whe[n] an erroneous instruction has been given on the law, and a correct instruction might have produced a different result, the error is not cured by the fact that the jury might have found for the prevailing party on some basis unaffected by the error.") (internal quotation omitted).

## II.     Evidence of Legislative Lobbying

¶34          The Wings contend the superior court improperly excluded evidence that a U-Haul representative lobbied the Arizona legislature to amend A.R.S. § 28-101's definitions of semitrailer and trailer to expressly exclude tow dollies. In making this claim, the Wings challenge both the court's initial determination that the lobbying evidence was irrelevant, post-accident conduct and its subsequent finding that U-Haul did not "open the door" to the evidence at trial.

¶35          While the parties litigated the Wings' motion for partial summary judgment on the scope and application of A.R.S. § 28-952(A)(3), a lobbyist representing U-Haul appeared before a legislative committee and introduced a bill to amend the statutory definitions of trailer and semitrailer. Before voting on the measure, a legislator specifically asked the lobbyist, for purposes of "full disclosure," whether any event had precipitated U-Haul's interest in the amendment. In response, the lobbyist did not advise of pending litigation concerning this issue but told the committee that U-Haul had simply reviewed the statutes governing transportation in the ordinary course of business and determined the definitional provisions required clarification. The legislature later amended the statute as requested by U-Haul.

¶36          During pretrial litigation, U-Haul moved in limine to exclude any evidence of its lobbying efforts. The Wings, in turn, moved in limine to exclude any evidence of the statutory amendments to A.R.S. § 28-101. After a hearing, the superior court granted both motions.

¶37          At trial, the Wings' attorney called U-Haul's director of engineering to testify and asked about the tow dolly's design, eliciting an admission that U-Haul had never conducted testing to determine whether tow dollies would be safer with a brake system. Although the director acknowledged that brakes "shorten the stopping distance," he testified that brakes can cause "many problems." Shortly after this exchange, the Wings' attorney asked the director how U-Haul had responded after discovering it

had been found in violation of the statutory brake requirement. Over defense counsel's objection, the director stated that U-Haul did not implement any changes.

¶38            As a follow-up, the Wings' attorney asked whether U-Haul had conducted any studies to determine the expense of bringing the tow dollies into statutory compliance, and the director testified he was not aware of any such report. On cross-examination, however, the director testified that since the superior court's A.R.S. § 28-952 partial summary judgment ruling, U-Haul had investigated and evaluated a variety of braking systems, claiming that U-Haul was "actively looking" for a functional tow dolly brake. Likewise, when later asked whether tow dollies are safer with brakes, U-Haul's chairman testified that the company had a team of employees researching a tow dolly braking system.

¶39            Based on this testimony, the Wings urged the superior court to reconsider its pretrial ruling precluding the lobbying evidence, arguing U-Haul had moved "the goal posts" by introducing evidence of its post-accident efforts to comply with the statute. Specifically, the Wings asked the court to admit the lobbying evidence to impeach the director and chairman's testimony that U-Haul had actively attempted to comply with the statutory brake requirement after the court's partial summary judgment ruling. The court denied the Wings' request, finding the lobbying evidence did not directly contradict the challenged testimony. The court also reaffirmed its earlier findings that the lobbying evidence was irrelevant and unfairly prejudicial.

¶40            "We review evidentiary rulings for an abuse of discretion and generally affirm a [superior] court's admission or exclusion of evidence absent a clear abuse or legal error and resulting prejudice." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 543, ¶ 33 (App. 2004). Prejudice from the erroneous exclusion of evidence "will not be presumed but must be evident from the record." *Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 487 (App. 1992). In other words, "an error is harmless if there is no reasonable probability the verdict might have been different." *Id.*

¶41            Relevant evidence is admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or rule. Ariz. R. Evid. 402.  Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence." Ariz. R. Evid. 401.  Nonetheless, even relevant evidence "may be excluded if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice." Ariz. R. Evid. 403.

¶42 Applying these rules here, the lobbying evidence did not tend to prove any element of the Wings' claims or otherwise make any fact of consequence in the action more or less probable. That is, evidence of U-Haul's post-accident efforts to amend the governing statutes neither increased nor decreased the probability that U-Haul violated the statutory brake requirement without legal excuse. At trial, U-Haul asserted it reasonably believed tow dollies were exempt from the statutory brake requirement and maintained that no individual or entity had ever claimed otherwise. Contrary to the Wings' contention, U-Haul's efforts to lobby the legislature to amend the relevant statutes after the Wings' filed the underlying complaint have no bearing on the reasonableness of U-Haul's purported belief, at the time of the accident, that tow dollies were exempt from the statutory brake requirement. Moreover, as reflected in their statements to the superior court and their appellate briefing, the Wings intended to use the evidence for an improper purpose—to show that U-Haul's representative was dishonest with the legislature—not to prove that U-Haul knew tow dollies were subject to the statutory brake requirement at the time of the accident. Therefore, on this record, the superior court did not abuse its discretion by excluding the lobbying evidence as both irrelevant and unfairly prejudicial.

¶43 Nonetheless, the Wings argue the superior court improperly precluded them from using the lobbying evidence to impeach U-Haul's representatives at trial. Specifically, the Wings contend U-Haul "opened the door" to the lobbying evidence when its representatives testified that the company had actively investigated tow dolly brake systems after the court's A.R.S. § 28-952 partial summary judgment ruling. According to the Wings, the lobbying evidence was necessary to refute the suggestion that U-Haul had attempted to bring its tow dollies into statutory compliance when, in fact, the reverse was true—U-Haul had successfully lobbied to amend the law and bring the governing statutes into conformity with U-Haul's practices.

¶44 When "one party injects improper or irrelevant evidence or argument, the 'door is open,' and the other party may have a right to retaliate by responding with comments or evidence on the same subject." *Pool v. Superior Court*, 139 Ariz. 98, 103 (1984) (citations omitted). "The rule is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal." *Id.*

¶45 Notwithstanding the Wings' contention that U-Haul "opened the door" to the lobbying evidence, the record reflects that the Wings'

15

attorney, not defense counsel, first posed questions regarding U-Haul's post-accident conduct. These initial questions improperly called for information about subsequent remedial measures and defense counsel's objection should have been sustained. Ariz. R. Evid. 407. While defense counsel followed up on that line of questioning, he did not materially broaden the scope of the inquiry beyond what had been posed on direct examination. A party may not circumvent a preclusive evidentiary ruling by questioning witnesses about tangentially-related matters and then arguing that follow-up questions on cross-examination, which did not broaden the scope of the initial questioning, "opened the door" to the precluded evidence.

¶46        Furthermore, we reject the Wings' assertion that the lobbying evidence was admissible for impeachment purposes. While the chairman and director testified that U-Haul actively pursued tow dolly braking systems in response to the superior court's A.R.S. § 28-952 partial summary judgment ruling, neither denied that U-Haul had engaged in lobbying efforts. Stated differently, the lobbying evidence does not directly controvert the chairman and director's testimony that U-Haul researched and evaluated various tow dolly brake systems.

¶47        In summary, U-Haul's post-accident conduct was irrelevant to the Wings' claims and the probative value of the lobbying evidence was outweighed by its prejudicial effect. To the extent U-Haul's representatives testified to matters tangentially-related to the lobbying evidence, they did so in response to a line of questioning first posed by the Wings' attorney, and the lobbying evidence did not directly contradict their testimony. Therefore, the superior court did not abuse its discretion by precluding the lobbying evidence.

### III.    Evidence of Similar Incidents

¶48        The Wings contend the superior court made a series of improper evidentiary rulings regarding other similar tow dolly incidents. Although the Wings do not challenge the court's initial ruling excluding such evidence, they argue the court improperly: (1) permitted a U-Haul witness to testify that he was unaware of any similar tow dolly incidents; (2) precluded the Wings' attorney from confronting a U-Haul witness with statistical evidence of similar incidents; and (3) allowed defense counsel to argue in closing that the Wings had failed to present any evidence of similar incidents.

¶**49**        Before trial, U-Haul moved in limine to exclude evidence of any other tow dolly accidents, incidents, claims, or lawsuits. In response, the Wings avowed they would not "introduce . . . the details of another accident" but asserted statistical evidence—demonstrating that nearly all "loss of control tow dolly accidents" occurred when a passenger vehicle, sport-utility vehicle, or pickup truck pulled a tow dolly rather than a six-wheel truck—was admissible. After oral argument, the superior court granted U-Haul's motion in part, precluding evidence of specific tow dolly incidents unless the Wings showed "sufficient similarity" but expressly authorizing the use of statistical evidence to demonstrate U-Haul's knowledge of tow dolly safety.

¶**50**        At trial, the Wings' attorney questioned the engineering director regarding a study that purportedly showed 99 percent of U-Haul tow dolly accidents involve passenger vehicles. In response, the director testified that the study was not consistent with his "own experience" and explained that U-Haul's "accident statistics" were "very low" compared to national standards and other companies. When pressed, however, the director acknowledged he did not have any data comparing the percentage of tow dolly accidents that involved "passenger vehicles" with "six wheel trucks."

¶**51**        Later, defense counsel called the former president of the U-Haul Company of Oregon to testify and asked him whether, based on his own experience, U-Haul's tow dollies are safe. Although the former president expressly disclaimed any mechanical or engineering expertise, he testified that he and his family members have used tow dollies and, based on his personal experience, he believes that they are safe. Defense counsel then asked the former president whether he was personally aware of any tow dolly accidents involving injury or death, and he testified, without objection, that he was not aware of any such accidents occurring in Oregon. On cross-examination, defense counsel objected when the Wings' attorney attempted to impeach the former president's testimony with statistical evidence of tow dolly accidents. At a sidebar, the superior court admonished the Wings' attorney that he could only use the statistical evidence to impeach the former president's testimony if it specifically related to tow dolly accidents in Oregon. When cross-examination resumed, the Wings' attorney moved to another line of questioning.

¶**52**        During closing argument, defense counsel challenged the Wings' safety expert's testimony that U-Haul's tow dollies were unsafe and "the worst," noting the Wings had failed to present any evidence of other lawsuits involving U-Haul's tow dollies. Overruling the Wing's objection,

the superior court stated the jury had "heard the evidence" and "[t]his is argument." Moments later, at the outset of rebuttal, the Wings' attorney told the jurors that he "would love to talk . . . about other accidents" but could not because "[t]hey're not admissible in this case." Arguing defense counsel "knew" evidence of other incidents was inadmissible, the Wings' attorney asserted defense counsel had "attempt[ed] to mislead" the jurors.

**¶53**　　　　First, the Wings contend the superior court improperly permitted the former president to testify that he was unaware of any tow dolly incidents in Oregon. We are perplexed that the court allowed a fact witness to testify regarding his personal belief in the safety of U-Haul tow dollies and general lack of knowledge of tow dolly accidents in Oregon. However, the Wings failed to object to the testimony that they now allege was improper, and therefore waived the issue on appeal. *See Sobol v. Marsh*, 212 Ariz. 301, 303, ¶ 7 (App. 2006).

**¶54**　　　　Second, the Wings argue the superior court improperly precluded them from impeaching the former president's testimony with statistical evidence. The record reflects that the court instructed the Wings' attorney that he could confront the witness with statistical evidence if it related to the given testimony—the absence of tow dolly accidents in Oregon. This restriction denied the Wings' attorney the ability to impeach the lay witness about the overall safety of the equipment based on the small sample size—the State of Oregon. The Wings should have been allowed to cross-examine this witness to demonstrate that the number of tow dolly accidents in Oregon or lack thereof is not consistent with the national average of accidents involving tow dollies. Again, this witness disclaimed being an expert and this entire line of questioning was improper.

**¶55**　　　　When questioning resumed, the Wings' attorney moved on to another line of questioning. Because the statistical evidence did not controvert the witness's testimony, it was not admissible for impeachment purposes. Moreover, as the Wings acknowledge, they had the opportunity to present the statistical evidence to the jury while questioning the director of engineering.

**¶56**　　　　Third, the Wings contend the superior court improperly permitted defense counsel to argue that the Wings' failure to present evidence of other similar incidents negated their claim that U-Haul's tow dollies are unsafe. Although the court's pretrial ruling excluding evidence of other tow dolly incidents permitted the Wings to prove that particular incidents were sufficiently similar to warrant admission, and they failed to

do so, defense counsel's argument, at a minimum, violated the spirit of the ruling.

## CONCLUSION

**¶57** For the foregoing reasons, we vacate the judgment and remand for a new trial on the Wings' claim of negligence per se. Because it has not prevailed on appeal, we deny U-Haul's request for an award of its appellate costs.



AMY M. WOOD • Clerk of the Court
FILED: AA