IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVID KAUFMAN, an adult individual,
and PHOENIX CORVETTE SALES LTD,
*Plaintiffs/Appellants*,

*v.*

CHRISTINA GUEVARA; PINNACLE NISSAN, INC.;
and NISSAN NORTH AMERICA, INC.,
*Defendants/Appellees*.

No. 1 CA-CV 24-0518

FILED 12-11-2025

Appeal from the Superior Court in Maricopa County
No. CV2020-055036
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Maynard Cronin Erickson & Curran, P.L.C., Phoenix
By Daniel D. Maynard, Douglas C. Erickson
*Counsel for Plaintiffs/Appellants*

Clark Hill PLC, Scottsdale
By Darrell E. Davis, Ryan J. Lorenz
*Counsel for Defendant/Appellee Pinnacle Nissan, Inc.*

Klein Thomas Lee & Fresard, Phoenix
By Paul R. Lee, Brandon L. Boxler (pro hac vice)
*Counsel for Defendants/Appellees Nissan North America, Inc.*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

---

**B R O W N**, Judge:

¶1        Arizona Revised Statutes § 28-3475 prohibits a vehicle owner from knowingly allowing anyone to drive the vehicle on a highway who is not properly authorized to drive.  The primary question before us is whether violating that law constitutes negligence per se.  Because we answer the question affirmatively, we vacate the superior court's grant of summary judgment in favor of the vehicle owner in this case and remand for further proceedings.

**BACKGROUND**

¶2        In March 2020, Christina Guevara visited Pinnacle Nissan, Inc. ("Pinnacle") to buy a car.  She told a sales representative she did not have a valid driver's license and instead presented an Arizona identification card.  Pinnacle did not ask and Guevara did not disclose why she did not have a driver's license, which was suspended for violations of driving under the influence.  Ultimately Guevara agreed to buy a 2019 Nissan Sentra.  Because she did not qualify for financing independently, Pinnacle required a co-signer.  Guevara then signed various documents, including a conditional delivery confirmation and acknowledgment, a promissory note, and an application for title and registration.  The co-signer, who never had a valid driver's license and does not drive, also signed the documents.  Until final approval by a financial institution, Pinnacle would retain legal ownership of the car.

¶3        After accepting a down payment, Pinnacle gave Guevara the keys to the car, and she drove away.  A few days later, the car required maintenance and Pinnacle told Guevara to bring it back to the dealership.  While driving to the dealership without a license and under the influence of alcohol, she crashed into a car driven by David Kaufman and owned by Phoenix Corvette Sales LTD (collectively, "Kaufman").

¶4        As relevant to this appeal, Kaufman sued Pinnacle and Nissan North America, Inc. ("Nissan") for negligent entrustment, alleging Pinnacle

violated its duty to Kaufman and the public when it entrusted the car to Guevara and failed to investigate why neither she nor the co-signer lacked valid driver's licenses. After discovery, Pinnacle moved for summary judgment, asserting Kaufman could not make a prima facie case because he had no evidence showing (1) Guevara had a physical or mental condition rendering her incompetent to drive safely, or (2) Pinnacle knew or should have known about Guevara's incompetence when it entrusted her with the car. Pinnacle did not dispute that it owned the car. Nissan also requested summary judgment, asserting Kaufman neither identified any specific theory of agency nor provided any facts that an agency relationship existed between Nissan and Pinnacle.

¶5        The superior court granted both motions, explaining in part Kaufman had cited no Arizona law imposing an affirmative duty on an auto dealer to ask why a potential car buyer lacks a valid driver's license, and the "mere fact that the vehicle owner is aware that the entrusted driver is unlicensed is insufficient, by itself, to establish liability." The court then concluded that because the claim against Nissan was based solely on vicarious liability for Pinnacle's conduct, Nissan was not liable. Following entry of a judgment entered under Arizona Rule of Civil Procedure 54(b), Kaufman timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶6        Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo, including the superior court's application of the law and whether there were genuine issues of material fact, viewing the facts and reasonable inferences in the light most favorable to the non-moving party. *Takieh v. O'Meara*, 252 Ariz. 51, 56, ¶ 11 (App. 2021).

### A.        Vicarious Liability - Nissan

¶7        Nissan argues Kaufman provides no basis to support holding it vicariously liable for any asserted negligence by Pinnacle. *See Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 88, ¶ 38 (App. 2005) ("[A] court must find that the principal had the right to control the purported agent's conduct for the transaction at issue."). The superior court did not address the alleged agency relationship between Pinnacle and Nissan because it concluded that if the agent is not liable, neither is the principal. But we will affirm the

court's ruling for any reason supported by the record. *See Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986) (affirming a grant of summary judgment while acknowledging this court "will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court"). Given that Kaufman has provided no evidence establishing an agency relationship between Pinnacle and Nissan, there is nothing attaching liability to Nissan. We therefore affirm the superior court's grant of summary judgment for Nissan.

### B.     Negligence Per Se - Pinnacle

**¶8**          After our initial review of the appellate briefing, we ordered the parties to provide supplemental briefs addressing whether a violation of § 28-3475 constitutes negligence per se. Section 28-3475 states that "[a] person shall not authorize or knowingly permit a motor vehicle owned by that person or under that person's control to be driven on a highway by any other person who is not authorized under this chapter or in violation" of Chapter 8, titled "Motor Vehicle Driver Licenses." A person who violates § 28-3475 is subject to a civil penalty. *See* A.R.S. § 28-3471.

**¶9**          Kaufman should have raised § 28-3475 in the superior court, which understandably focused its ruling based on legal arguments the parties presented. Typically, failure to raise the issue would result in waiver on appeal. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) (Generally, "legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits."). But "waiver is a procedural concept that we do not rigidly employ in a mechanical fashion," and we may exercise our discretion to address issues otherwise waived. *Azore, LLC v. Bassett*, 236 Ariz. 424, 427, ¶ 7 (App. 2014). Exceptions to the waiver principle may arise when "questions of a general public nature" are presented and particularly when

> the question raised for the first time is one of substantive law which is not affected by any dispute as to the facts of the case, for under such circumstances the parties may present the issue as thoroughly in the appellate court as it could have been presented below, without injury to either one.

*Rubens v. Costello*, 75 Ariz. 5, 8–9 (1952) (quoting *Town of S. Tucson v. Bd. of Supervisors*, 52 Ariz. 575, 583 (1938)). Moreover, in its supplemental brief Pinnacle does not argue waiver. Thus, in our discretion, we consider the applicability of § 28-3475. *Cf. Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195

Ariz. 148, 155, ¶ 28 (App. 1999) (finding a party that "never raised waiver as a defense in the trial court . . . waived its waiver argument").

¶10 Section 28-3475 is directly relevant to the issues presented here, where the material facts are undisputed. And because the parties have been allowed to thoroughly present their positions through supplemental briefing and oral argument, in our discretion we address how the statute affects this appeal. *See Evenstad v. State*, 178 Ariz. 578, 582 (App. 1993) ("[W]hen we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result."); *see also Est. of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253–54 (1994) ("Arizona's judiciary shares responsibility for the evolution of the law of torts.").

¶11 Kaufman argues Pinnacle's violation of § 28-3475 constitutes negligence per se. According to Pinnacle, however, the statute does not affect this appeal and should not be adopted as the standard of care; instead, the legal analysis should be governed by various sections of the Restatement (Second) of Torts (1965) ("Restatement").[1]

¶12 Negligence per se "describe[s] those instances where certain acts or omissions constitute negligence without further inquiry [into] the circumstances or reasonableness of their occurrence." *Deering v. Carter*, 92 Ariz. 329, 333 (1962). Generally, "a claim for negligence per se must be

---

[1] We recognize the more recent Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010) ("Third Restatement") addresses the role of statutory violations as negligence per se. Under Third Restatement § 14, "[a]n actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." We decline to address § 14 here. First, neither party cited the Third Restatement in their briefing, so deciding whether § 14 should be adopted under such circumstances would be "quite unusual and unwise." *Guerra v. State*, 237 Ariz. 183, 188, ¶ 25 (2015). And while we typically follow the Restatement absent Arizona law to the contrary, Arizona courts have declined to adopt certain portions of the Third Restatement. *See id.; Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 572, ¶ 51 (2018); *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 337–38, ¶¶ 16–18 (App. 2012). Second, we are unaware of any Arizona case broadly accepting the Third Restatement, much less § 14 specifically. Finally, we see nothing in § 14 or its corresponding comments that contravenes the principles we rely on in our analysis.

based on a statute enacted 'for the protection and safety of the public.'" *Steinberger v. McVey*, 234 Ariz. 125, 139, ¶ 56 (App. 2014) (quoting *Good v. City of Glendale*, 150 Ariz. 218, 221 (App. 1986)). Also, such a claim cannot succeed unless "a person violates a specific legal requirement." *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 612–13, ¶ 34 (App. 2014). If the statute defines only a "general standard of care," then applying negligence per se is inappropriate. *Hutto v. Francisco*, 210 Ariz. 88, 91, ¶ 14 (App. 2005).

### 1. Standard of Care

**¶13** According to Pinnacle, if the legislature wanted § 28-3475 to establish the standard of care for circumstances such as those presented here, it could have done so. And by failing to expressly impose civil liability in § 28-3475, as it has done in other instances, *see, e.g.*, A.R.S. § 28-3163 (furnishing vehicle to unlicensed minor), the legislature must not have intended § 28-3475 to have bearing on the standard of care for negligent entrustment claims. But a "duty of care and the attendant standard of conduct can . . . be found in a statute even though the statute is silent on the issue of civil liability." *Carrillo v. El Mirage Roadhouse, Inc.*, 164 Ariz. 364, 369 (App. 1990) (citing Restatement § 286, comment d, which provides "that when the legislature has adopted a statute requiring certain conduct and imposing either civil or criminal penalties for breach, the court is free to adopt and apply that standard in negligence actions notwithstanding that the legislature has failed to so provide"); *cf. Est. of Hernandez*, 177 Ariz. at 253 (explaining that a criminal statute "may establish a tort duty" if it is designed to protect a class of people against the risk of the type of harm that occurred because the statute was violated).

**¶14** Moreover, Restatement § 285 comment c explains that a "court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence." *See Webster v. Culbertson*, 158 Ariz. 159, 163 (1988) ("In the absence of law to the contrary, Arizona follows the Restatement."). A "court may derive a standard of care from a statute 'if it first determines that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm.'" *Martin*, 209 Ariz. at 536, ¶ 23 (quoting *Tellez v. Saban*, 188 Ariz. 165, 169 (App. 1996)). Under Restatement § 288B, an "unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable [person], is negligence in itself." Thus, we are not persuaded that the legislature's silence as to tort liability for violations of § 28-3475 demands that we rule

in Pinnacle's favor. *Cf. Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 106 (1993) ("Silence in and of itself, in the absence of any indication that the legislature has considered the interpretation, is not instructive.").

**¶15**        Arizona courts have not addressed whether a vehicle owner's violation of § 28-3475, which prohibits knowingly permitting or entrusting one's motor vehicle to an unauthorized driver, affects the owner's liability if the unauthorized driver commits a tort. But this court analyzed a related statute in *Tellez*, 188 Ariz. at 165. There, a car rental company knowingly loaned its car to an unlicensed driver, who caused an accident. The plaintiffs alleged a claim for negligent entrustment, asserting the company negligently rented the car and because the company violated a statute requiring it to inspect driver's licenses when renting cars, *see* A.R.S. § 28-477 (1989) (later amended and renumbered as A.R.S. § 28-3472), the driver caused the accident. *Tellez*, 188 Ariz. at 168. The superior court granted summary judgment, finding no evidence that "'lack of a driver's license played any part in causing the accident.'" *Id.*

**¶16**        In a divided opinion, the majority sua sponte (and without supplemental briefing) concluded the statutory breach was not negligence per se because the statute was not "intended to protect any particular individual or class of persons from harm" but merely furthered "the state's interest in requiring that all persons who operate motor vehicles on public highways are licensed." *Id.* at 169–70, 170 n.3; *see also id.* at 178 (Voss, J., dissenting) (describing majority's holding).

**¶17**        The primary question in *Tellez* did not concern negligence per se; instead, the court reversed the superior court's finding on proximate cause. *Id.* at 168, 171–73. Given that causation is not at issue here, it is unclear how much weight the negligence per se discussion in *Tellez* carries. *Cf. Alejandro v. Harrison*, 223 Ariz. 21, 25, ¶ 12 (App. 2009) ("*Obitur dictum* is a statement of general law made by a court which is unnecessary to its decision and thus not precedential . . . ."). Even so, the *Tellez* court acknowledged it could adopt a standard of conduct from a legislative enactment under Restatement §§ 285–86, but it declined to do so under Restatement § 288. *Tellez*, 188 Ariz. at 169. The court appeared to give weight to the company's argument, explaining that if "the legislature intended to establish [the statute] as a standard of conduct in a negligence action, it could have easily done so." *Id.* Yet the court determined the company "owe[d] a common law duty to other motorists to guard against unreasonable risks of harm created by persons to whom it rents vehicles," reasoning in part that allowing the company to avoid liability "by turning a deaf ear to the reasons for [the driver]'s lack of a license would violate the

legislative policy articulated in A.R.S. [§] 28-477." *Id.* at 170–71. The court thus held that a reasonable jury could find that the company was negligent in knowingly renting a car to an unlicensed driver. *Id.* at 173. Because § 28-3475 was adopted the year after *Tellez* was decided, and the negligence per se analysis in *Tellez* does not persuade us, we decline to extend it to this case.

¶18 Pinnacle also relies on *Lutfy v. Lockhart*, 37 Ariz. 488 (1931). There, the car owner loaned his car to his brother, who was not a licensed driver. *Id.* at 490. While driving the car, the brother collided with and injured the plaintiff, who sued both the driver and the owner for negligence, alleging the driver was "incompetent to drive because he was not licensed to operate an automobile" and the owner knew he was unlicensed. *Id.* at 492. A jury awarded damages to the plaintiff, finding both defendants liable. *Id.* at 490. Our supreme court reversed the judgment against the car owner. *Id.* at 497. The court noted that the statute governing licensing prohibited anyone from driving a motor vehicle on a highway without a license. *Id.* at 492 (citing Rev. Code of Ariz. § 1654 (1928)). But the court explained that, while having a license "might be some evidence of his competency, the lack of such license would be no evidence whatever that he was not a capable, skilled, and safe driver." *Id.* at 493. The court concluded that "[t]o say the owner's knowledge that the person to whom he loaned his car was not licensed to drive would make him liable for the latter's torts committed in the course of its use would extend the rule to include cases far beyond its application in the past." *Id.*

¶19 *Lutfy* is not dispositive here. Unlike § 28-3475, which was adopted in 1997, the statute discussed in *Lutfy* did not preclude entrusting a car to an unlicensed driver. And nothing indicates *Lutfy* analyzed the statute under a negligence per se theory. Given the adoption of § 28-3475 and the evolution of the Restatement regarding the legal principles governing negligence per se, *Lutfy* does not support Pinnacle's position.

¶20 Pinnacle also argues that *Acuna v. Kroack*, 212 Ariz. 104 (App. 2006), instead of § 28-3475, governs a claim for negligent entrustment of a motor vehicle in Arizona. That case involved an appeal following a jury's verdict finding negligent entrustment, *Acuna*, 212 Ariz. at 108, ¶ 13, and this court noted that the uncontested jury instruction correctly listed the elements of a negligent entrustment claim in Arizona, which required a plaintiff to prove

> (1) that defendant owned or controlled a vehicle; (2) defendant gave the driver permission to operate a vehicle; (3)

8

the driver, by virtue of his physical or mental condition, was incompetent to drive safely; (4) [that] defendant knew or should have known that the driver, by virtue of his physical or mental condition, was incompetent to drive safely; (5) causation; and (6) damages.

*Id.* at 110, ¶ 22 (citation modified).

**¶21**        Similarly, Pinnacle relies on Restatement § 390, which states:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, *or otherwise*, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

(Emphasis added).    Pinnacle further argues that courts recognize a difference between someone incompetent to drive (as a negligent entrustment claim requires) and someone unlicensed to drive (as § 28-3475 prohibits).  But as *Acuna* acknowledged, Restatement § 390 is not the only avenue for proving a car owner negligently entrusted their car to another person.  *Acuna*, 212 Ariz. at 110, ¶ 22 n.7 (finding negligent entrustment is not restricted "to cases in which the owner entrusts a vehicle to one known to be incompetent or inexperienced") (quoting *Tellez*, 188 Ariz. at 171); *see also Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 42 (1990) (recognizing a person can owe both a statutory and common law duty of care).[2]  Thus, at this stage of the litigation, Kaufman is not precluded from relying on both § 28-3475 and Restatement § 390 in pursuing a negligent entrustment claim.

### 2.    Certainty/Specificity

**¶22**        Pinnacle argues the phrase "any other person who is not authorized under this chapter or in violation of this chapter" is not certain or specific enough to determine what type of conduct § 28-3475 prohibits

---

[2]    *See also Seward v. Griffin*, 452 N.E.2d 558, 563 (Ill. App. Ct. 1983) (concluding that entrusting a car to a person whom the defendant had "actual knowledge" was an unlicensed driver was "an independent negligent act" that proximately caused injury, and that "entrusting a car to an unlicensed driver is tantamount to entrusting a car to an incompetent driver").

without evaluating the facts of each case. According to Pinnacle, even if the statute does contemplate particular classes of plaintiffs, it is too general to allow the adoption of a specific standard of care; instead, Arizona courts need to follow the reasonable person standard as applied in common law negligence.

¶23　　　Ordinary negligence (reasonable person standard) applies when a jury must "measure" a party's conduct when the statute does not prohibit certain or specific acts, while negligence per se is "better reserved to describe those instances where certain acts or omissions constitute negligence without further inquiry into the circumstances or reasonableness of their occurrence." *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 126 Ariz. 227, 229 (App. 1980) (quoting *Deering v. Carter*, 92 Ariz. 329, 333 (1962)). Section 28-3475 expressly prohibits a person from authorizing or knowingly permitting their motor vehicle to be driven by an unauthorized driver. Thus, no measuring of the car owner's act is required. *See Steinberger*, 234 Ariz. at 138–39, ¶ 55 (To find negligence per se, a "jury need only find that the party committed the specific act prohibited, or omitted to do the specific act required by the statute or ordinance."); *cf. Hutto*, 210 Ariz. at 91, ¶ 13 (concluding that statutory language establishing a general principle that motor vehicles be "safely maintained," rather than a specific one "requiring safety belts," does not create a sufficiently specific standard); *Ibarra v. Gastelum*, 249 Ariz. 493, 496, ¶ 11 (App. 2020) ("Phrases like '[m]ake all repairs,' 'do whatever is necessary' and 'fit and habitable' describe generalized standards, not the 'certain or specific acts' required for negligence per se to apply."); *Reyes*, 235 Ariz. at 612–13 ¶¶ 33, 35 (referring to a California statute prohibiting specified vehicular movements if they cannot be made with reasonable safety, which establishes a general standard of care, not the specificity required for a negligence per se instruction).

### 3.　　Protection and Safety of the Public

¶24　　　Pinnacle argues § 28-3475's purpose "is merely to protect the interests of the state in ensuring that every individual who operates a vehicle on a highway is in compliance with the requirements of Chapter 8." Kaufman, however, asserts that § 28-3475 encompasses several safety factors: vehicles can cause major injuries, including death; authorized drivers must be a certain age and pass tests to ensure they know traffic laws and how to drive or control a vehicle safely; the legislature has adopted several laws to promote safe driving and protect pedestrians; and a person can lose driving privileges for violating transportation statutes.

¶25 Pinnacle does not dispute those assertions, which are reasonable inferences about what safety issues are in play when the legislature regulates the use of vehicles. *See, e.g.*, *Lutfy*, 37 Ariz. at 493 ("An automobile is a machine that is capable of doing great damage if not carefully handled, and for this reason the owner must use care in allowing others to assume control over it." (citation omitted)); *Urs v. Maricopa Cnty. Att'y's Off.*, 201 Ariz. 71, 73, ¶ 7 (App. 2001) ("'An automobile is, potentially, a dangerous instrumentality, as the appalling number of fatalities brought about every day by its operation bear distressing witness.'" (quoting *Dist. of Colombia v. Colts*, 282 U.S. 63, 73 (1930))); *cf. Werner v. Prins*, 168 Ariz. 271, 274 (App. 1991) (recognizing the penalty of license suspension for intoxicated drivers stems from the state's compelling interest in removing such drivers from the roads because of the threat they pose to the safety of others). A reasonable interpretation of the legislature's blanket prohibition against the entrustment of motor vehicles to unauthorized drivers suggests that it contemplated the possibility that such drivers could drive, thereby harming themselves or others. *Cf.* A.R.S. § 28-3164(B) (authorizing the Department of Transportation to examine a driver's license applicant's "[k]nowledge of *safe driving practices*," knowledge of the effect of using devices or engaging in other actions "that could distract a driver on *the safe or effective operation* of a motor vehicle," and to conduct "[o]ther physical and mental examinations if the department finds them necessary to determine the applicant's fitness to *safely* operate a motor vehicle." (emphasis added.))

¶26 Pinnacle also points to Restatement § 288, which states:

> The court will not adopt as the standard of conduct of a reasonable [person] the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively
>
> (a) to protect the interests of the state or any subdivision of it as such, or
>
> (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or
>
> (c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

11

(d) to protect a class of persons other than the one whose interests are invaded, or

(e) to protect another interest than the one invaded, or

(f) to protect against other harm than that which has resulted, or

(g) to protect against any other hazards than that from which the harm has resulted.

None of these purposes are the exclusive purposes of § 28-3475.

¶27        Reasonably construed, the legislature's adoption of § 28-3475 contemplates that an unauthorized driver falls within a class of people who should not be driving on Arizona highways because of health and safety risks that unauthorized driving poses for another class, which includes motorists (like Kaufman), and pedestrians. By enacting § 28-3475, the legislature prohibited owners of motor vehicles from knowingly entrusting them to unauthorized drivers. *See Brannigan v. Raybuck*, 136 Ariz. 513, 517 (1983) (recognizing that "breach of a statute intended as a safety regulation is not merely evidence of negligence but is negligence per se"). We therefore conclude that A.R.S. § 28-3475 was enacted for the protection and safety of the public; it sets the standard of care. And if a jury finds that Pinnacle violated the statute, that finding would constitute negligence per se. *See Steinberger*, 234 Ariz. at 138–39, ¶ 55.

¶28        Our analysis aligns with decisions from several other jurisdictions holding that violating similar statutes constitutes negligence per se. *See, e.g.*, *Kinney v. Smith*, 508 P.2d 1234, 1237 (Idaho 1973) (holding that a statute prohibiting vehicle owners from knowingly permitting their vehicles to be driven by unauthorized drivers was "designed to protect other highway users from injuries caused by the negligence of unlicensed drivers," and that violating the statute constitutes negligence per se); *Hoke v. Atl. Greyhound Corp.*, 40 S.E.2d 345, 350 (N.C. 1946) (concluding that violation of N.C. Gen. Stat. § 20-34, prohibiting a car owner from knowingly permitting another person to drive the car without proper legal authority, is negligence per se); *Arias v. Aguilar*, 515 S.W.2d 313, 316 (Tex. App. 1974) (construing statute recodified as Tex. Transp. Code § 521.458(b), and holding that "entrustment of a vehicle to a person who does not have a valid driver's license is negligence per se"); *Kempf v. Boehrig*, 290 N.W.2d 562, 564 (Wis. Ct. App. 1980) (explaining that negligence per se "must be affirmed" when a defendant knowingly permitted an unauthorized driver to operate his vehicle in violation of Wis. Stat. § 343.45, and that permission resulted

in the complained injury); *cf. Equitable Gen. Ins. Co. v. Silva*, 658 P.2d 446, 448, ¶ 6 (N.M. Ct. App. 1983) (stating that violating a "statute enacted for the benefit of the public" like N.M. Stat. Ann. § 66-5-41 (prohibiting car owner from allowing unauthorized person to drive the car) would be negligence per se); *Crosby v. Hummell*, 63 P.3d 1022, 1025 (Alaska 2003) (finding that a jury instruction accurately stated the statutory elements for the offense on which plaintiff based her "claim of negligence per se—permitting an unlicensed person to drive, a violation of [Alaska Stat. §] 28.15.281(b)").[3]

### 4.    Questions for Jury Determination

**¶29**        The superior court determined that (1) Guevara told Pinnacle she did not have a valid driver's license; (2) Pinnacle entrusted Guevara with its car, which she drove off Pinnacle's lot without a license; and (3) Guevara was driving the car back to Pinnacle for repairs, while under the influence of alcohol and without a license, when she collided into the car Kaufman was driving.  On these facts, a jury could reasonably find that Pinnacle was negligent per se in knowingly supplying or entrusting its car to Guevara, who Pinnacle knew was unauthorized to drive on Arizona roads, in violation of A.R.S. § 28-3475.  If the jury reaches that conclusion, it must decide whether a violation of the statute was "the proximate cause" of Kaufman's injuries.  *See Hatch Dev., LLC v. Solomon*, 240 Ariz. 171, 177, ¶ 21 (App. 2016); *Jaynes v. McConnell*, 238 Ariz. 211, 218, ¶ 22 (App. 2015) (noting that proximate cause is generally a question of fact).

---

[3]        Pinnacle's reliance on *Beasley v. Best Car Buys, LTD*, 363 P.3d 777, 778–79, ¶¶ 3–4 (Colo. App. 2015) is misplaced.  Nothing in that opinion indicates the auto dealer retained ownership of the car, which was sold "to co-purchasers—one of whom provided a valid driver's license."  Similarly, none of the other cases Pinnacle cites, without analysis, are persuasive in resolving this appeal.

**CONCLUSION**

¶**30**       We vacate the superior court's grant of summary judgment for Pinnacle and remand for further proceedings consistent with this opinion. We affirm the court's grant of summary judgment for Nissan. We deny Kaufman's attorneys' fees request under A.R.S. § 12-341.01 because there is no contractual relationship with Pinnacle.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:           JR